7470

## CAROLINA AGENCY CO. v. GARLINGTON.

1. A WARRANT OF ATTACHMENT may be issued in an action in equity for accounting against the property of a non-resident.

2. THE VERIFICATION OF A COMPLAINT to support a warrant of attachment against an absconding debtor in which the allegations are made as if on personal knowledge, but the verification states some are made on information and some on knowledge, without stating which, and not stating the sources of information and the grounds of belief, is not sufficient, but the warrant is sustained, as the fact in question is covered by other allegations in the complaint and affidavit.

3. PLEADINGS—ATTACHMENT.—A defendant in attachment proceedings cannot complain if the plaintiff does not allege specifically the amount due in an action for an accounting by him of the funds of the plaintiff in his keeping.

4. OFFICE—CORPORATION.—Statement under oath that the affiant is an officer of a corporation is presumptive proof of it.

5. CORPORATIONS.—AN AFFIDAVIT on information and belief without stating the source of the information or grounds of belief is not sufficient to support, in attachment, an allegation that the suit was brought by an officer of the corporation without instruction from the directors.

6. JURISDICTION.—Suit against an absconding debtor is properly brought in the county in which the debtor last resided before leaving the State.

Before HYDRICK, J., Richland, April, 1909. Affirmed.

Action by the Carolina Agency Co., v. John Y. Garlington.

The Circuit decree on the motion to vacate the attachment, is:

"This action was commenced January 5th, 1909. The allegations of the complaint are, in substance, as follows, except the 7th and 8th paragraphs, which are copied in full:

1. "That plaintiff is a corporation, chartered under laws of this State, on March 26th, 1907, with a capital stock of 15,000 shares of the par value of $10.00 each, and with authority to act as general agent for insurance companies.

2. "That it became the general agent of the State Mutual Life Insurance Company of Rome, Ga., and solicited and sold policies for that company in this State.

3. "That defendant subscribed for 7,500 shares of the stock of the plaintiff company, and was its treasurer and general manager from April 1st, 1907, until June 5th, 1908, and, among other things, his duties were to receive and care for the funds of the company, derived from the sale of its stock, from premiums of insurance collected, and from other sources, and to keep the books of account.

4. "That on April 25th, 1907, the directors of the plaintiff company authorized the defendant to sell so much of the capital stock as had not been subscribed for (which was practically all of it, except his own), as follows: 3,000 shares in 1907, at not less than par; 3,000 shares in 1908, at such premiums as the board should fix, and the balance at such time and such premium as the board should direct; that he was not authorized to sell any of the stock at less than par, and was to turn the proceeds of sale into the treasury.

5. "That between the 25th April, 1907, and the 15th May, 1908, the defendant sold about 5,000 shares of the stock at par, and received therefor $50,000.

6. "That he received for plaintiff, up to 1st May, 1908, premiums of insurance, on policies issued by the State Mutual Life Insurance Company, of Rome, Ga., amounting to $70,000

7. " 'That although frequently called upon by plaintiff to account for his actings and doings as general manager and treasurer, and to account to it for the moneys received by him, less the sum authorized to be paid out by him, the defendant has never done so, but on the contrary he has recently departed from the State of South Carolina, and has continued to absent himself therefrom for the purpose of defeating and defrauding this plaintiff, his creditor, and other creditors of their rights, and that, at the time of his departure from this State, the defendant was a resident of the county and State aforesaid.'

8. " 'That the defendant, John Y. Garlington, is indebted to the plaintiff in the sum of twenty-five thousand dollars on account of moneys received and collected by him, aforesaid, as general manager and treasurer, which amount plaintiff alleges is the least sum that will be due it, after crediting the said defendant with all moneys properly expended and paid by him, as general manager and treasurer as aforesaid, and that said amount is now due and owing by the defendant to the plaintiff.'

"The prayer is that defendant account to plaintiff for all moneys received for it; and for judgment for the amount found to be due on such accounting; and, in default of such accounting, for judgment of $25,000; and for such other relief as may be just.

"The complaint is verified by the president of the plaintiff company, as 'true of his knowledge, which knowledge is derived from personal acquaintance with the defendant, and from the records of the Carolina Agency Company.'

Attached to the complaint is the following affidavit: 'Personally comes W. A. Clark, president of plaintiff company, who, being first duly sworn, deposes and says: That in addition to the facts and circumstances set forth in the complaint in this action verified by this deponent, and which deponent reavers are true, that he knows of his knowledge that defendant is indebted to the plaintiff in the form, manner, and for the amount set forth in the said complaint; that the defendant was informed by the deponent that he must pay the amount due the plaintiff company, or suit would be instituted for the recovery of the same; that soon thereafter the said defendant departed from the State of South Carolina, and although informed of the claim of plaintiff, and claim of others, defendant has kept himself without the State, so that he cannot be served with a summons and complaint, and to avoid the service thereof; deponent further says that defendant has property within the State of South Carolina; that the matters and things stated in the complaint in this action, and in his affidavit, as aforesaid, are derived from the personal knowledge of deponent, and from the statements current in this city, representing that the said defendant is keeping himself without the limits of this State to avoid the service of a summons and other process that may be issued by this and other creditors.'

"Upon the verified complaint and the foregoing affidavit, the clerk issued a warrant of attachment, which this motion seeks to vacate on the grounds that it was irregularly and improvidently issued.

"The grounds of the motion are too numerous to set them out in full, but I shall endeavor to cover them all in what I shall say hereafter.

"In support of this motion, the defendant makes affidavit that he removed his residence from Columbia to Chattanooga, Tennessee, in November, 1908, that it was not done clandestinely, but openly and notoriously, and with the

knowledge and approval of the president of the plaintiff company. He denies that he left the State or remained without its limits with the intent to defeat or defraud his creditors or to avoid service of process, and says that after he first removed to Tennessee, he made frequent visits back to Columbia, and frequently saw and talked with the president of the plaintiff company, with which his connection was severed in June, 1908. He denied any indebtedness to the plaintiff. The affidavit is long, and with the exhibits attached, goes into details of what was said and done at some of the meetings of the board of directors of the plaintiff company as to his management of its affairs, and some other matters which are not relevant to the questions to be decided on this motion, except that he does say that he is informed and believes, without stating the source of his information or the grounds of his belief, that this suit was instituted without the authority of the board of directors of the plaintiff company.

"Notwithstanding the able and exhaustive arguments of counsel, which have been helpful and suggestive, my conclusion on the principal point made has not been reached without difficulty and doubt.

"It will be seen from the complaint that this is primarily and principally an action for an accounting, which is one of equitable cognizance. The question, whether an attachment can be obtained in an equitable action is one that has been raised several times, but has never yet been decided by our Supreme Court. The Courts of other States give directly conflicting answers to that question, and as the attachment acts vary, more or less, in their phraseology, the decisions of the Courts upon them do not afford much assistance.

"One of my chief difficulties has been in trying to reconcile some of our own decisions, and I think I shall be able to show that some of them are irreconcilable.

"The remedy by attachment is purely statutory, and being a harsh remedy, and in derogation of the common law, the rule of strict construction has been adopted by the courts of this State.

"This does not mean that language shall not have its full meaning, but merely that everything not clearly within the letter, as well as the spirit and reason of the statute shall be excluded.

"A cursory glance at the attachment acts of this State and the manner in which they have been amended and extended shows clearly an increasing tendency on the part of the legislature to extend the remedy to new kinds of actions, as well as new classes of defendants.

"Prior to the Code, the remedy was limited to suits on a few specified contracts against absent or non-resident debtors. It was next extended to absconding debtors, and, by the act of 1744, it was extended to 'any tort, trespass or injury actually done to real or personal property.' The reason assigned by the legislature for the writ is because the ordinary process could not be served upon non-resident or absconding debtors or tort-feasors.

"When the Code was adopted, the remedy was 'given in an action arising on contract for the recovery of money only, or in an action for the wrongful conversion of personal property,' and the class of defendants against whom the remedy might be obtained was increased considerably (14 Stat. 475). By the act of 1879 (17 Stat. 23), the language above quoted from the first Code was amended to read as follows:

" 'In any action arising for the recovery of money, or for the recovery of property, whether real or personal, and damages for the wrongful conversion and detention of personal property, or any action for the recovery of damages ·for injury done to either person or property.'

"What is the proper inference to be drawn as to the intent of the legislature in striking out the word 'an' and inserting

in its place the word 'any,' and in striking out the words 'on contract,' and the word 'only?' The conclusion is, to my mind, irresistible that the intent is thereby manifested to extend the remedy to all kinds of actions for the recovery of money, whether legal or equitable, or whether arising *ex contractu* or *ex delicto*.

"If the few torts specially mentioned are the only ones in which it was intended to allow the remedy, I can see no reason why the words 'on contract' were stricken out. No doubt, specifically mentioning a few torts, under the rule of *expressio unius est exclusio*, does point to an intention to exclude other actions sounding in tort. That test, however, is not absolute or infallible, and should not have the effect of controlling, by implication, the meaning of language which is clearly broad and comprehensive enough to include all such actions, especially when the implication arising from the leaving out of the words 'on contract' points equally as strongly, if not more strongly, to the opposite conclusion.

"Prior to the amendment of 1879, the remedy was confined to actions arising on purely legal demands. Hence, the question whether the writ could be obtained in an equitable action could scarcely have arisen, and the impression that it could be had only in actions at law was natural, as it was never issued in any other.

"There can be no doubt of the power of the legislature to extend the remedy to actions in equity, and it seems to me to make no difference whether the action be one at law or in equity, if it falls within the language of the statute, and is 'an action for the recovery of money.'

"No matter what my own views might be, I should be constrained to hold that this is not such an action, under the case of *Addison* v. *Sujette,* 50 S. C., 192, 28 S. E., 948, if it were not for the later case of *Fleming* v. *Byrd,* 78 S. C., 20, 58 S. E., 965.

"The decision in *Addison* v. *Sujette* is rested, in part at least, upon the authority of *Sarjeant* v. *Helmbold*, Harp., 219, which decided that, under the attachment acts prior to the Code, the writ could not be had in action for slander. As we have seen, the only action of tort in which the writ was allowable at that time, was an action for 'torts, trespass or injuries actually done to property real or personal,' and the statute clearly did not include within its meaning actions for slander; but it does not follow that the language of the present Code is not comprehensive enough to include such actions.

"In the case of *Bank* v. *Stelling*, 31 S. C., 368, 9 S. E., 1028, the late Chief Justice McIver quotes from section 248 of the Code the following: 'In any action arising for the recovery of money, or for the recovery of property, whether real or personal, or against a defendant who is not a resident of this State,' etc. Commenting on the above quotation, he says: 'So that it is not necessary that, in order to obtain an attachment, the action must be for the recovery of money only, but may be obtained in many other cases. Indeed, the language of that section would seem to imply that where, as in this case, the defendant is a non-resident, the remedy by attachment is obtainable in an action for any purpose.' To be sure, the language just quoted is an *obiter dictum;* but upon examination and analysis of section 248 of the Code, it will be seen that the classes of actions in which the writ of attachment is obtainable are connected by the disjunctive 'or,' and that in some of them the class is determined by the character of the defendant, as for instance, foreign corporations, non-residents, etc. So that it seems clear to me that the learned Chief Justice was entirely correct, when he said the language of the Code was broad enough to allow the writ in any action against a non-resident.

"But the same learned Judge held the contrary opinion in *Addison* v. *Sujette,* in which he says: 'Now, while in

one sense an action for slander or, as for that matter, any other action on the law side of the Court, might be regarded as an action for the recovery of money, yet it is manifest that the legislature did not use those terms in that sense; for in the very same sentence the legislature proceeds to specify actions for the recovery of damages for injury done to either person or property; which, of course, are just as much actions for the recovery of money as an action for slander.'

"The next case is *Fleming* v. *Byrd,* 78 S. C., 20, 58 S. E., 965, in which the Court hold that an action for damages for breach of contract is such an action 'for the recovery of money' that attachment may be had in it against a nonresident. How can an action for damages for breach of contract be said to be an action for the recovery of money any more than an action for damages for slander?

"While no intention is expressed in *Fleming* v. *Byrd,* of overruling *Addison* v. *Sujette,* on the contrary, it is referred to as authority, but upon another point, it seems to me to be the necessary result, because the two decisions are irreconcilable.

"However that may be, even if an action for slander is not an action for the recovery of money, it does not follow that this is not an action for the recovery of money. For, while it is true that it is an action primarily for an accounting, yet it is also true that it is an action for the recovery of the sum of money found to be due on such accounting. We must remember that the word 'only' was stricken out, so that the suit may now be for some other purpose besides the recovery of money, as was the case in *Bank* v. *Stelling,* 31 S. C., 360, 9 S. E., 1028, *Gibson* v. *Everett,* 41 S. C., 23, 19 S. E., 286, and *Fersts* v. *Powers,* 58 S. C., 406, 36 S. E., 744; where the actions were for the recovery of money and for equitable relief also.

"It has also occurred to me that in so far as this is an action to recover the amount received by the defendant

for the shares of stock sold by him, it may be a legal cause of action. Suppose that had been the plaintiff's only cause of action, would it not have been a legal action? It is not necessary, however, to decide that question, for I think it makes no difference if the action is one 'for the recovery of money,' and I think it is at least as much so as an action for damages for breach of contract.

"Is the complaint properly verified? The verifier swears that the foregoing complaint is true of his own knowledge, which knowledge is derived from personal acquaintance with the defendant and from the records of the Carolina Agency Company. The sources from which his knowledge was derived are stated, I presume, to comply with the requirements of section 178 of the Code, which says. 'When the pleading is verified by any other person than the party he shall set forth in his affidavit, his knowledge,' etc. No fact is alleged in the complaint, going to make up the statement of the plaintiff's cause of action, of which the president of the company, who makes the verification, may not have had personal knowledge derived from acquaintance with the defendant and the records of the Carolina Agency Company, as kept by the defendant. Where none of the allegations of the complaint are stated to have been made upon information and belief, but all are stated as if made on personal knowledge, and it appears from the verification that some were made upon information and belief, and the sources of information and the grounds of belief are not stated, and it is not stated which allegations are made on knowledge, and which on information and belief, the verification will be held insufficient, 28 S. C., 181; *Burmester* v. *Moseley,* 33 S. C., 251, 11 S. E., 786; *Addison* v. *Sujette,* 50 S. C., 192, 28 S. E., 948.

"If the allegation that defendant 'has recently departed from the State of South Carolina, and has continued to absent himself therefrom for the purpose of defeating and

defrauding this plaintiff were necessary to a statement of the plaintiff's cause of action, the verification would have been fatally defective, for it has been frequently held by our Supreme Court that such a statement is only a conclusion of law, and not a statement of fact; and that the facts upon which an allegation is based must be stated so that the Court can draw the necessary inferences to make out a *prima facie* case. But that allegation is not necessary to a statement of the cause of action; but goes only to the plaintiff's right to the warrant of attachment on the ground that defendant departed from the State with intent to defraud his creditors, for which purpose it is not sufficient; for to show the *intent* with which defendant left the State, or kept himself without the State, the facts and circumstances must be stated from which the Court can reasonably infer such intent. *Smith & Melton* v. *Walker,* 6 S. C., 174; *Meyers* v. *Whitehart,* 24 S. C., 202.

"I think, however, that enough of facts and circumstances are stated in the complaint and affidavit, taken together, to show *prima facie,* at least, that the defendant left the State and kept himself without the State in order to avoid the service of a summons. It is stated: 1, That frequent demands had been made upon him for an accounting, which he had failed to give; 2, That he was told that he must pay the amount due the plaintiff, or suit would be brought to collect it; 3, That soon thereafter, defendant departed from the State; and 4, That, although informed of the plaintiff's claim, and the claim of others, the defendant has kept himself without the State, so that he cannot be served with process. Those are all allegations of fact, from which I think it reasonable to infer that he was absent from the State to avoid service of process. From what has been said, it is unnecessary to add that so much of the affidavit as alleges the intent, without stating the facts and circumstances has not been considered, nor has the statement 'That the said defendant is keeping himself without

the limits of this State to avoid the service of a summons' been considered, because it further appears from the affidavit that the statement is made upon information and belief, based upon current rumor in the city of Columbia to that effect, and the particular sources of information are not stated.

"Furthermore, I think the facts stated are sufficient to warrant the inference that defendant was a non-resident. *Munroe* v. *Williams,* 37 S. C., 81, 16 S. E., 533.

"The warrant will not be vacated even though the defendant has rebutted the *prima facie* showing as to the first ground, for he admits in his affidavit that he was a non-resident. *Roddey* v. *Erwin,* 31, S. C., 36, 9 S. E., 729.

"Does the complaint and affidavit sufficiently 'specify' the amount of the plaintiff's claim? The purpose of that provision is that an excessive levy shall not be made to satisfy an indefinite claim. The amount claimed is sworn to be 'at least' $25,000, and the warrant issued only for that amount. If the defendant owes the plaintiff more than that amount, how has he been injured by having his property seized for an amount less than he actually owes? Ought he be heard to say that because he may owe the plaintiff more, and has so managed its affairs and kept its books that it is impossible for plaintiff to say exactly how much he does owe it, he shall not be made to pay anything. In *Smith & Melton* v. *Walker, supra,* the point was made that the affidavit did not state the time from which interest should be computed. The Court said: 'If the plaintiff does not sufficiently state one of the several items that go to make up the amount of his demand, he is liable to have the effect of his attachment limited to that portion of his claim which is capable of computation. It is, therefore, the interest of the plaintiff, rather than the defendant, that the amount of the plaintiff's claim should be distinctly stated.'

9—85

"The point is made that it does not appear that the persons who signed the bond as president and secretary of the company are, in fact, such officers. Mr. Clark swears in the verification to the complaint that he is president of the company, and the defendant swears in his affidavit that Mr. Stansell is its secretary. But if nothing more appeared than the official title of these officers affixed to their signatures, it would be presumed that they were such officers until the contrary was made to appear.

"The defendant swears in his affidavit on information and belief, without giving the sources of his information or the grounds of his belief, that this action was commenced without authority from the board of directors. That showing is insufficient. Until the contrary is made to appear, it will be presumed that an attorney is authorized to represent the client for whom he appears.

"Whether the warrant was properly served and recorded in the proper manner and in the proper office goes rather to the validity of the lien attempted to be acquired than to the validity of the process.

"There can be no doubt the Court has jurisdiction of the action, and of any property of the defendant within this State, and if it cannot acquire jurisdiction of the person of the defendant, it can render a judgment *in rem. Stanley* v. *Stanley,* 35 S. C., 94, 14 S. E., 675.

"At the time defendant left the State, he was a resident of Richland county. The action was properly brought in that county. Code, section 146.

"It has not been suggested wherein the attachment acts violate any provision of the State or Federal Constitutions.

"For the reasons herein given, the motion is refused."

From this decree the defendant appeals.

*Messrs. Dial & Todd,* for appellant, cite: *Construction of attachment statutes:* 31 S. C., 307; 24 S. C., 202; 6 S. C., 169; 10 S. C., 469; 13 S. C., 478; 21 S. C., 584; 32 S. C., 157; 3 Ency., 184: 4 Cyc., 400. *Verification of the complaint:* 50 S. C., 192; 33 S. C., 254; 4 Cyc., 412; 1 Bail., 185; 6 S. C., 169; 10 S. C., 469; 21 S. C., 583; 24 S. C., 202; 25 S. C., 461; 31 S. C., 47, 444; 42 S. C., 162; 31 S. C., 301. *Amount claimed is not specified:* Code of Proc., 250; 32 S. C., 159; Drake on At., 86; 4 Cyc., 444, 445, 500; 73 Me., 404; 5 N. Y. Supp., 568: 1 Shinn on At., 214, 16; 32 S. C., 159; 12 La. Ann., 110. *This action is not within the Code provisions:* Code of Proc., 248; Harp., 219; 78 S. C., 20; 31 S. C., 368; 41 S. C., 22; 58 S. C., 406; 31 S. C., 360; 18 Abb. Pr., 291; 3 Ency., 193, 184; 3 Abb. N. S. (N. Y.), 248; Drake on Att., secs. 9, 34; 1 Shinn on At., 31; 4 Cyc., 459; 4 Cyc., 440; 25 N. W., 21. *Action of the plaintiff's agent to commence the action:* 107 Va., 187; 71 N. J. L., 434. *This action cannot be maintained in our courts:* 24 L. Ed., 565; 144 U. S., 44; 39 S. C., 497; 4 Cyc., 457, 10; 33 S. C., 353; 113 Ga., 259.

*Messrs. Logan & Edmunds,* contra, cite: *Will an attachment lie in an equity cause?* 14 Stat., 474; Act Dec. 23, 1879; 50 S. C., 12; 78 S. C., 20; 41 S. C., 22; 31 S. C., 26, 361; 58 S. C., 398; 3 Pom. Eq. Jur., 465; 52 Am. R., 662; 85 Col., 642; 35 S. W., 708; 5 Minn., 569; Drake on Att., secs. 27, 34; 12 Ohio State, 165; 11 Ill., 471; 24 Neb., 782; 89 Fed. R., 964. *Sufficiency of allegations of departure:* 31 S. C., 46; 37 S. C., 87; 39 S. C., 484. *Amount claimed is sufficiently and definitely set forth:* 62 S. C., 526; 6 S. C., 169; 4 Cyc., 494; 13 Louis, 345; Drake on At., sec. 95. *Action is sustainable in our Courts,* 95 U. S., 174; 35 S. C., 94; 5 Rich., 63; 10 Wall, 306; 61 Miss., 170.

March 5, 1910. The opinion of the Count was delivered by

MR. JUSTICE WOODS. The judgment of this Court is that the judgment of the Circuit Court be affirmed, for the reasons therein stated.

MR. JUSTICE HYDRICK *was disqualified in this case.*