## Lagerwahl v. White.

(Decided May 29, 1913.)

## Appeal from McCracken Circuit Court.

1. Attachment—Against Property of Non-resident Defendant.—An attachment under section 194 of the civil code cannot be obtained against a non-resident defendant upon the sole ground of non-residency except on a claim arising on a contract, express or implied, or a judgment or award.

2. Attachment—Against Property of Non-resident Defendant.—An attachment may be obtained against the property of a non-resident upon the grounds specified in subsections 6, 7 and 8 of section 194, when he is about to remove his property, or a material part thereof, out of this State, not leaving enough to satisfy the plaintiff's claim, or has sold, conveyed or otherwise disposed of his property, or is about to sell, convey or otherwise dispose of it, with the fraudulent intent to cheat his creditors. When an attachment is obtained on these grounds, it may be levied upon property of the defendant, whether he be a resident of the State or a permanent or a temporary non-resident.

3. Attachment—Against Property of Non-resident.—An attachment under subsections 2, 3, 4 and 5 of section 194 of the civil code, cannot be obtained against a defendant who has never been a resident of this State. These subsections only authorize an attachment against a resident defendant who has been absent from the State four months, or has departed from the State with the intent to defraud his creditors, or has left to avoid the service of summons, or conceals himself so that a summons cannot be served upon him.

4. Attachment—In Actions to Recover Damages for Tort.—In an action to recover damages for personal injury or other tort, the plaintiff may obtain an attachment against the property of the defendant if he can bring himself within the provisions of the code authorizing such an attachment.

5. Process—Non-resident Doing Business in This State—Service Upon Agent or Manager.—Under subsection six of section fifty-one of the code, authorizing service of summons upon the manager or agent of a non-resident doing business in this State, it is doubtful if a non-resident, who only collects rents from property owned by him in this state and gives to the property such attention as an owner usually does, is doing business in this State within the meaning of this section.

6. Process—Service as Authorized by Section 56 of the Civil Code—Effect of.—When a non-resident defendant has been summoned as provided in section 56 of the code, his property in this State, upon which the plaintiff has a contract, attachment, or other statutory lien, may be subjected to the payment of the plaintiff's debt.

D. G. PARK for appellant.

H. S. CORBETT and CAMPBELL & CAMPBELL for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

To understand the points at issue in this case it will be necessary to state at some length the proceedings had in the lower court. In May, 1908, the appellant, Lagerwahl, brought a suit in the McCracken Circuit Court against White to recover damages sustained, as he alleged, by the falling of the wall of a building owned by him. An affidavit for a warning order filed with this petition stated that White was a non-resident of this state and a resident of the state of Tennessee, and that his postoffice address was Nashville, Tenn., and thereupon a warning order attorney was appointed. A summons also issued upon this petition and was executed in August, 1908, upon L. M. Rieke, president of the American German National Bank in McCracken County.

In September, 1908, an amended petition was filed in which it was averred that White was a non-resident of the state and that he owned some business houses in McCracken County, and that the American German National Bank was his agent to rent out his property and collect rents. After this, White, without entering his appearance, moved to quash the return on the summons executed on the president of the American German National Bank upon the ground that he was not engaged in business in this state, nor was the American German National Bank or Rieke his agent.

Before the motion to quash was disposed of by the court, and in December, 1909, Lagerwahl filed another affidavit in which he said that the claim sued on was a just claim and he ought to recover thereon the sum of $2,000, and that the defendant, J. M. White, had been absent from the state for more than four months past. On the day this affidavit was filed another summons was issued on the petition, and this summons, on the day of its issual, was executed on C. E. Jennings, who it was claimed was an agent for White, and on the same day Lagerwahl

executed an attachment bond, and thereupon an attachment was issued against the property of White, and it was levied upon a business house in McCracken County owned by White.

At the January term, 1910, White, without entering his appearance, made a motion to quash the service of the summons upon Jennings, and upon hearing the motion it was sustained by the court as was also the motion made in September, 1908, to quash the service of process upon Rieke, president of the American German National Bank. After these motions to quash the returns on the summons had been sustained, Lagerwahl filed another affidavit amending his grounds for attachment, in which he said that White "has purposely absented himself from this state and had done so when the attachment was sued out in this action for more than four months in order to avoid the service of a summons on him in this action, and thus so conceals himself that a summons cannot be served on him."

In February, 1910, Lagerwahl filed another amended petition in which he set up that White did not own any personal property in this state, but that he did own the business house upon which the attachment heretofore noticed was levied, and that although White had, previous to the institution of this suit, frequently visited McCracken County, he had since purposely remained out of the county "to avoid service of a summons on him in this action, and he also purposely remained outside the state of Kentucky for the same purpose, or concealed himself elsewhere than in McCracken County in this state, if he has ever returned, for the same purpose, so that such summons could not be served upon him, and plaintiff now says that by reason of his absence from this state in such manner for more than four months before the suing out of his attachment in this action, and his continued absence in such manner ever since, plaintiff has been unable and is still unable to obtain any service of his summons on the defendant in this action, and by reason of such conduct he has been unable to reduce his claim to a judgment or other form of debt than unliquidated damages by reason of such injury, and for such reasons the court should not require any judgment or debt arising upon a contract, or judgment or award in order to sustain his attachment herein sued out."

He further averred that the business house upon which his attachment was levied was worth twenty thou-

sand dollars, and he asked that the court cause a jury to be impaneled, so that his damages might be assessed. After this, and in May, 1910, Lagerwahl caused to be delivered to White, in the state of Tennessee, as shown by the return of an officer, a certified copy of his petition, the summons, warning order, affidavit, attachment, and in fact the entire record that had been made in the case up to that time. In August, 1910, and again in October, 1910, Lagerwahl caused other attachments to be issued and served on various parties as garnishees, and one of the garnishees answered showing that it had in its possession some two hundred dollars due White.

In June, 1911, on motion of Lagerwahl, a jury was impaneled to assess the damages he had sustained and a verdict was returned in his favor for $2,000, and thereupon judgment was entered reserving all questions concerning the validity of the proceedings, but showing that the damages in favor of Lagerwahl had been assessed at $2,000.

After this, in November, 1911, another summons was issued against White and another attachment issued against his property, and also an amended and supplemental petition filed, all of which were delivered to White in the state of Tennessee. In this last amended petition Lagerwahl set up the assessment of his damages at $2,000, and averred that White was a non-resident "and has been absent from this state for more than four months and purposely remains out of the state with the fraudulent intent to avoid service of any summons or other process on him in this state, and so conceals himself that a summons cannot be served on him in this state."

He further averred that he had, with the fraudulent intent to delay him in the collection of his debt, concealed, disposed of, or removed all of his personal property from this state, and so arranged the rents of his property as that they could not be subjected. In March, 1912, on motion of Lagerwahl, it was adjudged that White was indebted to him in the sum of $2,000, the amount of the assessment by the jury, and that the attachments issued against his property be sustained, and the property levied on under the attachments was ordered to be sold.

After this, White filed this suit in equity seeking to enjoin the sale of his property under the judgment upon the ground that the judgment was void. Upon hearing the case, the lower court ruled that the judgment was

void and enjoined further proceedings under it, and from this judgment this appeal is prosecuted.

To sum up briefly the proceedings in the common law action, it appears (1) that Lagerwahl brought suit against White to recover damages for personal injuries sustained by the negligence of White; (2) that White at all times before and since the institution of this action was a resident of the state of Tennessee, but that when the suit was brought, and at all times subsequent thereto, he owned valuable real estate in McCracken County; (3) that White was proceeded against as a non-resident and affidavits were made stating that he had been absent from the state four months and had departed therefrom with the intent to defraud his creditors and to avoid the service of a summons, and that he had concealed himself so that a summons could not be served upon him, and was about to or had removed a material part of his personal property out of the state with the fraudulent intent to cheat and hinder his creditors; (4) that attachments issued were levied upon real property of White worth twenty thousand dollars; (5) that a jury was impaneled to assess the damages in favor of Lagerwahl and that they returned a verdict fixing his damages at $2,000; (6) that afterwards a judgment was entered sustaining the attachments levied on this real estate and directing that it be sold to satisfy the assessment; (7) that before the assessment of damages by the jury, there was delivered to White in the state of Tennessee a copy of all the proceedings taken in the case of Lagerwahl against him; (8) that White did not at any time or in any manner enter his appearance in the action of Lagerwahl against him; (9) that White did not remove anything from the state except the rents of his property.

With reference to the service of summons on Rieke, and Jennings, little need be said. It is provided in subsection six of section fifty-one of the Civil Code that "In actions against an individual residing in another state, * * * engaged in business in this state, the summons may be served on the manager, or agent of, or person in charge of, such business in this state, in the county where the business is carried on, or in the county where the cause of action occurred," and the service on Rieke and Jennings was under this section.

But it is doubtful if White was engaged in business in this state within the meaning of this section. The only business he carried on in this state was to collect rents

from real property that he owned and to give such attention to the property as an owner usually does, and it is questionable if this was doing business in this state so as to authorize the service of process under the section referred to. We may, however, pass this question as neither Rieke nor Jennings were the agents of White for any purpose, nor did either of them, in any manner, manage or have charge of any business for White in this state.

As White was at all times a non-resident of this state, the question arises, was the levy of an attachment upon his property in this state authorized by the Code? Section 194 of the Code provides "that the plaintiff may have an attachment against the property of the defendant in an action for the recovery of money against (1) a defendant, who is a foreign corporation or non-resident of the State; or, (2) who has been absent therefrom four months; or, (3) has departed therefrom with intent to defraud his creditors; or (4) has left the county of his residence to avoid the service of a summons; or, (5) so conceals himself that a summons cannot be served upon him; or, (6) is about to remove, or has removed, his property, or a material part thereof, out of this state, not leaving enough therein to satisfy the plaintiff's claim, or the claims of said defendant's creditors; or, (7) has sold, conveyed, or otherwise disposed of, his property, or suffered or permitted it to be sold, with the fraudulent intent to cheat, hinder or delay his creditors; or, (8) is about to sell, convey, or otherwise dispose of, his property, with such intent. But an attachment shall not be granted on the ground that the defendant is a foreign corporation, or a non-resident of this state, for any claim other than a debt or demand arising upon a contract, express or implied, or a judgment or award."

It will thus be observed that sub-section 8 provides that an attachment shall not be granted on the sole ground that the defendant is a non-resident of this State, except for a debt or demand arising upon a contract, express or implied, or a judgment or award. As the demand asserted by Lagerwahl did not arise upon a contract, express or implied, or a judgment or award, it is clear that he could not obtain an attachment against White upon the sole ground that he was a non-resident of the state. The claim of Lagerwahl sounded in tort and was a suit to recover damages for the alleged negligence of White, and, although the plaintiff in such an action

may obtain an attachment against the property of the defendant, he cannot do so upon the sole ground that the defendant is a non-resident of the state. If he obtains an attachment, it must be under some other sub-section of section 194 that authorizes the obtaining of an attachment.

We say that under the circumstances mentioned a plaintiff, in an action to recover damages for personal injuries, may obtain an attachment, because section 194 authorizes attachments in actions for the recovery of money, and sub-section 8 of section 732 provides that "an action for money includes an action for the recovery of damages as well as of money due by contract." Blewett v. Sprague, 24 Ky. Law Rep., 1860. But as Lagerwahl could not obtain an attachment against the property of White upon the ground that he was a non-resident of the state, although an attachment upon this ground is authorized, in an action arising upon a contract, judgment or award, we must look to the other sub-sections of 194 to determine whether any of them authorized an attachment against the property of White.

Sub-sections 2, 3, 4, 5, 6, 7 and 8 specify different grounds upon which an attachment may be obtained, but we think that sub-sections 2, 3, 4 and 5 refer to a defendant who is a resident of this state who has been absent therefrom four months, or has departed herefrom to defraud his creditors, or has left the county of his residence, or so conceals himself that summons cannot be served upon him and that an attachment cannot be obtained under these sub-sections against a defendant who has never been a resident of the state. Sub-section 1 of section 194 contains the only authority for the obtention of an attachment upon the sole ground that the defendant is a non-resident. Sub-section 2 authorizing an attachment against a defendant who has been absent from the state four months, evidently means a defendant who is a resident of the state at the time the attachment is obtained, but who has then been absent from the state four months. The wording of the sub-section seems to necessarily exclude a construction that would make it applicable to a defendant who had never resided in the state. Unless the section is construed as we have indicated, then in every case an attachment could be obtained against a person who had never been a resident of the state, because he would in every instance have been absent from the state four months, and there would be no

reason for providing in section 1 that an attachment might be obtained against a defendant who is a non-resident of the state. The fact that sub-section 1 authorizes an attachment against a defendant who is a non-resident also forbids a construction of sub-section 2 that would authorize an attachment against the defendant on the ground that he had been absent from the state four months.

Sub-section 3 refers to a resident defendant who has departed from the state with the intent to defraud his creditors, and sub-section 4 to a resident who has left to avoid the service of a summons, and sub-section 5 to a resident defendant who conceals himself so that a summons cannot be served upon him.

This leaves to be considered sub-sections 6, 7 and 8, which authorizes an attachment against the property of a defendant who is about to remove, or has removed his property, or a material part thereof, out of the state, or who has sold or conveyed, or is about to sell or convey, his property with a fraudulent intent. We think that under these sub-sections, or either of them, a plaintiff who has a claim, whether it arises out of a contract or a tort, may have an attachment against the property of a defendant found in this state whether he be a resident of the state or a permanent or temporary non-resident. In other words, a plaintiff who can make out grounds under either of these sub-sections may obtain an attachment and have it levied upon any property that he can find in this state, without reference to the place of residence of the defendant; and so Lagerwahl had the right to an attachment under either of these sub-sections against the property of White if the facts authorized him to obtain an attachment under them. Bates Machine Co. v. Norton Iron Works, 113 Ky., 372. But Lagerwahl did not in his affidavits, for an attachment, bring himself within the provisions of either of these sub-sections. The nearest approach to it was in the affidavit in which he averred that "White has changed the method of collecting his rents on the business house and lot aforesaid, and has sold and transferred and otherwise secretely disposed of such rents, and secretly removed them from this state, and continues to sell, transfer and otherwise secretly dispose of and remove them from this state, all with the fraudulent intent to hinder and delay plaintiff in the collection of his debt aforesaid, and thereby leaves no personal property in

this state, or other property known to plaintiff, except the house and lot aforesaid.''

It will be observed that in this affidavit Lagerwahl only charged White with fraudulently removing from the state the rents of his property. He did not charge that he was not leaving sufficient property in the state to satisfy his claim or the claims of his creditors, or that he had sold or disposed of, or was about to sell or dispose of his property with the fraudulent intent to delay his creditors. As it appears from Lagerwahl's pleadings and affidavits that White owned real property in the city of Paducah worth twenty thousand dollars, and there is no suggestion that he was endeavoring to sell or dispose of this real property, it is manifest that Lagerwahl could not make an affidavit that would authorize him to obtain an attachment under either of these sub-sections.

Having the foregoing view as to the proper construction of these sub-sections, and applying the rules announced to the facts shown by the record, it follows that Lagerwahl did not make out a case authorizing an attachment against the property of White, and the court had no jurisdiction to order a sale of the property of White unless authority for this procedure can be found in section 56 of the Code, reading as follows:

''Excepting infants (under the age of fourteen years) —other than married women—and persons of unsound mind and prisoners, if a defendant be out out this state the plaintiff may take a copy of the petition, certified by the clerk, with a summons annexed thereto, warning him to appear and answer the petition within sixty days after the same shall have been served on him, and may cause a copy thereof to be delivered to such defendant by a person to whom he is personally known. Proof of the delivery shall be made by the affidavit of the person making it, endorsed on or annexed to the certified copy and summons, in which the time and place of the delivery, and the fact that the defendant was personally known to the affiant, shall be stated. The officer before whom the affidavit is made shall certify that the affiant is personally known by him to be worthy of credit.''

But service as directed in this section does not authorize a personal judgment, as section 419 provides that ''no personal judgment shall be rendered against a defendant constructively summoned, or summoned out of this state as provided in section 56, and who has not appeared in the action.''

It is, however, insisted by counsel for Lagerwahl that, although a personal judgment cannot be obtained on service under this section, it yet authorizes the subjection of the property of the defendant upon which the plaintiff has a contract, attachment, or other statutory lien. If it should be conceded that the property of a nonresident defendant, who was served with process in the manner authorized by section 56, could be subjected under an attachment rightfully issued and levied on his property, this would not help Lagerwahl, because, as we have pointed out, no attachment was or could have been rightfully obtained by him.

For the reasons stated, the judgment of the court in the common law action subjecting the property of White, was void, and the court in the equity action now before us properly enjoined all proceedings thereunder.

Wherefore, the judgment is affirmed.