### SHEDD et al. v. CALUMET CONST. CO.*

(Circuit Court of Appeals, Seventh Circuit. January 4, 1921.)

No. 2779.

1. **Attachment ⊚⟿7—Action for tort is "action for recovery of money."**

　　Under Burns' Ann. St. Ind. 1914, § 947, authorizing attachments in "actions for the recovery of money," an attachment is authorized in tort actions for damages.

　　[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Action for Recovery of Money.]

2. **Damages ⬅42—Cost of redredging and additional cost of more expensive method of doing work held proximate result of interruption of work.**

Where defendants wrongfully interrupted plaintiff's dredging operations, and the trenches dredged filled up to some extent, and the delay also carried the work later into the fall season, and necessitated the use of a more expensive method of doing the work, the cost of clearing out or redredging the excavations, and of the more expensive mode of construction, were damages proximately resulting from the tortious act.

3. **Judgment ⬅627—Conclusive in favor of contractor employed by party whose rights were adjudicated.**

A judgment in favor of the M. Co. against defendants, adjudging that the M. Co., under a grant from defendants, had a lawful right to lay pipes at a particular point in the bed of a lake, was conclusive, in favor of a contractor employed by the M. Co. to do the work, that defendants' interference with the work was wrongful.

4. **Torts ⬅27—Evidence as to negotiations for settlement and abandonment thereof held immaterial.**

Where defendants wrongfully interrupted plaintiffs' dredging operations, and, after resumption of the dredging, again interfered with the work, evidence, in an action for damages, that the work was resumed in pursuance of negotiations for a settlement with the party employing plaintiff to do the work, and that the second interference was because of the abandonment of such negotiations, was properly excluded as immaterial.

In Error to the District Court of the United States for the District of Indiana.

Action by the Calumet Construction Company against Edward A. Shedd and another. Judgment for plaintiff, and defendants bring error. Affirmed.

Fred Barnett, of Hammond, Ind., for plaintiffs in error.

F. C. Crumpacker, of Hammond, Ind., for defendant in error.

Before BAKER, ALSCHULER, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. [1] A tort action in attachment was brought in the Indiana state court by defendant in error company against the Shedds, plaintiffs in error, and removed to the federal court. The service was by publication. One of the alleged errors is in the overruling of the Shedds' motion to quash the attachment and service, upon the ground that the statutes of Indiana do not authorize attachment in actions in tort. The statute authorizes attachment upon the grounds therein stated, "where the action is for the recovery of money." Section 947, Burns' R. S. Ind. 1914. Notwithstanding the statute has been long in force, we are unable to find that this question of its construction has been passed upon by any Indiana court of review, and counsel on both sides say it has not. The right of attachment exists by statute, and concededly, where the statute does not clearly authorize attachment in actions ex delicto, the right does not exist. In some of the states, where, as in Indiana, the right of attachment is given in actions "for the recovery of money," it has been held applicable to actions in tort as well as in contract. Davidson v. Owens, 5 Minn. 50 (Gil. 50); Thompson v. Stringfellow, 119 Ala. 317, 24 South. 849; Cain v. Perfect, 89 Kan. 361, 131 Pac. 573; Collins v.

Stanley, 15 Wyo. 282, 88 Pac. 620, 123 Am. St. Rep. 1022; Kidd v. Seifert, 11 Okl. 32, 65 Pac. 931; Lagerwahl v. White, 154 Ky. 162, 156 S. W. 1079; Carolina Agency Co. v. Garlington, 85 S. C. 114, 67 S. E. 225; Sturdevant v. Tuttle, 22 Ohio St. 111.

The statutory expression, "for the recovery of money," is surely broad enough to include such actions, which manifestly have for their sole purpose the recovery of money. In the absence of any limitation by construction of the Indiana courts, we do not, under the circumstances, feel warranted in circumscribing it as contended for, and we therefore hold that the alleged error predicated on the denial of the motion to quash the attachment is not well grounded.

[2] It is insisted that the damages alleged and recovered for do not appear to be the proximate result of the tortious act of plaintiffs in error. It seems that the Shedds were owners of a large tract of land in Indiana fronting on Lake Michigan, including in the tract what is known as the Wolf river outlet into the lake. They had sold about 18 acres of it to the Western Glucose Company, on which the latter constructed a manufacturing plant. In the conveyance to the Glucose Company they were granted by the Shedds an easement over about half a mile of their intervening land between the lake and the Glucose tract, for laying thereon two pipes, one for a lake water intake, and the other for a sewer outlet to the lake. The line for the pipes was not fixed, but the direction was pointed out, and the pipes were therefore laid to within a short distance of the lake shore. The Glucose Company transferred its property and easement to the American Maize Products Company, which last concern entered into contract with defendant in error, whereby the latter agreed to extend the pipes from the termini to the lake and under its bed, the water pipe 2,000 feet and the sewer pipe 200 feet, at a stipulated price per lineal foot. The pipes were to be laid in trenches connecting with the manholes near the shore line, to which the pipes had theretofore been laid and in the same general direction. For the purpose of carrying out its contract the Construction Company entered into a contract for the use of a dipper dredge at a cost of $21.50 per hour. By means of the dredge trenches were excavated in the bed of the lake, and were almost completed for laying the pipes therein, when the Shedds appeared, ordered the work stopped, and under threats of prosecution prevented the work from going on, and placed a custodian in charge to prevent further work. It was the contention of the Shedds that their grantees and successors had no right to extend the pipes into the lake at that place, which was just east of a long pier the Shedds had constructed as the westerly side of an entrance into a proposed Wolf Lake harbor, but that the pipes should have been laid west of such pier, and outside of such Wolf river outlet or harbor entrance.

The work was suspended for a few days, during which there was considerable filling up of the trenches that had been made, and after some negotiation it was again resumed, and continued for quite a number of days, whereupon the Shedds again interfered and stopped the work, which was thus again interrupted for a number of days, during which there were storms which greatly damaged the trenches. There-

upon the Maize Company obtained in the state court a temporary injunctive order against the Shedds, restraining them from further interfering with the work, and under the protection of such injunction the work was completed. But it appears that during the interruption, not only was there considerable filling up of the excavation which had been made by the dipper dredge, but the delays incident to the interruption threw the work so much later into the fall season that some of the work could not then well be carried on by the dipper dredge method, but required the construction of cofferdams, thus greatly increasing the cost. It was this additional cost of clearing out or redredging the excavations already made, and of the more expensive mode of construction alleged to have been occasioned by the delay, that constitutes the damage for which the action was brought, and is the basis of the verdict and judgment.

We are of opinion that work of this nature is such that it is not comparable to and does not fall within that class of cases where, notwithstanding the wrongful act, the wrongdoer cannot be held for damage resulting from a wholly independent intervening cause. We think it is fairly apparent that in undertaking such work as this there is inherently considerable risk and chance arising from conditions which are more or less problematic. One who undertakes to do such work of necessity speculates more or less upon the weather, for it seems that a channel of this kind, while remaining open, is easily subject to being damaged through filling by the agitation of the water through rough weather, and under such circumstances, where there is an unlawful interference with the work, the one causing it must contemplate that such damage may easily ensue during the delay. It is true that damaging weather might have been experienced, had there been no interruption, and such have been at the constructor's risk; but it is manifest that the longer the trench lies open the greater the liability to injury from filling up, and where the delay is through the wrongful act of another, the added risk, reasonably to be anticipated, be it from the weather or other causes, is upon the wrongdoer, and hence also the ensuing loss.

[3] It is contended that as to the Construction Company the record affords no evidence whatever that the Shedds wrongly interfered with their operations. It appears that after the temporary injunction was granted there was a full hearing in the state court of the issues in that cause, and it was there definitely found and decided that the plaintiff therein, the Maize Company, had, under the grant from the Shedds, the lawful right to lay these pipes in the place they were, and were being laid, at the time of the interference by the Shedds. This adjudication the District Court regarded as settling the question of the right of the Construction Company to do the work as it was being done when interfered with, upon the assumption that the Construction Company, though not party to that suit, was in privity with the Maize Company, under the contract with the latter, and in this we agree with the District Court. Nor can it be said, as is claimed, that the adjudication of the state court was effective only from the time it was made, which was long after the laying of the pipes had been completed.

The adjudication created no new rights, but only determined the rights of the parties under the grant from the Shedds, to the effect that the right existed all the time to lay the pipes along the lines on which the Construction Company was laying them when interfered with by the Shedds.

[4] It is insisted that there was serious error in rejecting the proffered testimony of witness Mecartney to the effect that, when the work was resumed after the first interference, it was in pursuance of negotiations and of a pending proposition for settlement, which, because of abandonment by the Maize Company, was never carried out, and that the second interference was because of such abandonment by the Maize Company. In our view the evidence was not material. The damages were predicated upon the consequence of the unlawful interference, and if work was resumed under agreement, pending negotiations for settlement, it would seem that this resumption of the work probably prevented the incurring of still larger damages than those represented by the judgment, and whether the second interference followed the failure of the Maize Company for any cause to make a settlement, it did not in our judgment affect the question of right of recovery of damages which the unlawful interference by the Shedds did actually cause. Counsel are quite right in saying that, if the Construction Company was in privity with the Maize Company, it would be bound by the acts of the Maize Company with reference to these negotiations. But the rejected evidence would in our judgment have been likewise inadmissible against the Maize Company, were it, instead of its contractual privy, seeking the recovery.

The judgment is affirmed.