## GLASCOCK *v.* LEMP.

### [No. 3,385.   Filed January 29, 1901.]

LIENS.— *Assignment by Liveryman.— Possession.—* The lien which §7254 Burns 1894 gives to a liveryman upon animals fed and cared for by him for the value of such feed and care cannot be assigned to another so as to preserve the lien and right to the possession of the property in favor of the assignee. *pp. 177-180.*

SAME.—*Personal Privilege.—Abandonment.—*A liveryman's lien, under §7254 Burns 1894, is purely a personal privilege in favor of the person to whom the claim for feed and services accrued, and depends on his continued possession of the animals, and an assignment of feed bill to a stranger and delivery of the animals to him destroys the lien. *pp. 177-180.*

From the Fountain Circuit Court.   *Reversed.*

*V. E. Livengood* and *A. T. Livengood,* for appellant.

WILEY, J.—An action in replevin by appellant as plaintiff against appellee as defendant, to recover the possession of a mare, and damages for her detention.   The issues were joined by an answer in denial and the cause tried by the court.   Upon proper request, the court made a special finding of facts and stated its conclusions of law thereon.   By its conclusions of law, the court held that appellant could not recover.   Appellant excepted to the conclusions of law, and the assignment of errors challenges such conclusions. Appellee has not filed any brief.

The court specially found that appellant was the owner of the mare in December, 1897; that at that time he entered into a contract with one Rusk whereby he loaned the mare to him to be used by him in traveling about the country; that said Rusk's business was selling monuments and tomb-

stones; that the mare was loaned to Rusk on the condition
that he pay for her feed and care while he used her; that
when appellant loaned the mare to Rusk he contemplated
leaving the State for a time, and soon after did go to a dis-
tant state and remained until October, 1898, during which
time he did not make any inquiry about the mare; that
Rusk, soon after taking possession of the mare, began keep-
ing her at a livery stable, which fact appellant well knew
before he left the State; that Rusk used the mare, and dur-
ing the summer of 1898 frequently put her in the livery-
stable of Samuel Simms, in Covington, Indiana, to be fed
and cared for; that said Simms was engaged in conducting
a feed, livery and sale stable, until about December 1, 1898;
that on September 1, 1898, Rusk left the mare in the
livery-stable of said Simms to be fed and cared for, and
went away declaring he would be gone a week, and directed
that said mare be cared for and driven moderately about
town for exercise during his absence; that he also left a
buggy with said mare, and never after returned or called
for the mare or buggy; that the mare was properly cared
for by Simms until she was transferred to appellee as here-
inafter found; that on December 6, 1898, there was due
said Simms for feeding and caring for said mare the sum
of $25; that no part of said indebtedness has ever been
paid; that on said last named day, desiring to close out his
said business, for the purpose of moving to another state,
and not caring to take said mare with him, said Simms sold
and assigned his said feed bill and claim of $25 against
said mare to appellee by written assignment thereof, and
received from appellee in consideration thereof a horse, and
delivered said mare and buggy to appellee with the agree-
ment and understanding that appellee should properly feed
and care for the said mare and hold said property subject to
the right of the owner to claim and receive the same upon
payment to appellee of said sum of $25; that in the month
of October, 1898, appellant ascertained that said mare was

held by said Simms and was being fed and cared for by him pursuant to said agreement between said Rusk and Simms; that he was at the stable of Simms, saw the mare there, and learned at that time that Simms held the mare for a feed bill then due and unpaid; that appellant made no offer to pay or discharge the same; that in December, 1898, appellant learned that said mare had been delivered over to appellee, but made no effort to see appellee or to ascertain the facts about his claims upon the mare, but allowed the mare to remain in appellee's possession without making known to appellee his claim thereto, or demanding of him the possession thereof until May 20, 1899; that on said day appellant made a demand on appellee for said mare, and thereupon appellee offered to turn her over to him upon payment of said sum of $25, feed bill assigned to him by said Simms; that appellant refused to pay the same. The court further found that the mare was worth $40; that all the time appellee kept her he fed and properly cared for her in his livery stable, and that there is due on said feed bill the sum of $25. As a conclusion of law, the court stated: "That plaintiff is not entitled to recover the possession of the animal in question without a tender of the feed bill assigned by Simms to the defendant." The special findings show that Simms was a liveryman and kept a stable for boarding and feeding, etc. The animal in question was placed in his stable to be boarded and cared for by one who was rightfully in possession of her, and who had a right to to place her in charge of Simms.

By the express provision of §7254 Burns 1894, §5292 Horner 1897, Simms had a lien upon the mare for the feed and care bestowed upon her. The question, therefore, presented for decision is simply this: Can this lien which the statute creates in favor of the keeper of a livery stable be assigned to another, and by such assignment the lien be preserved in favor of the assignee? An answer to this inquiry will be decisive of the question in controversy.

It is earnestly urged by counsel for appellant that the assignment of a claim for a feed bill and a surrender of the property held therefor, against which the lien could alone be enforced by the lien holder, destroys the right to such lien, and reduces the claim to a mere personal demand. This question has been ably discussed by text-writers, and it has been before the courts many times. All the authorities seem to be in accord.

In 2 Jones on Liens (2nd ed.), §§982, 983, it is said: "A common law lien is not a proper subject of sale or assignment, for it is neither property nor is it a debt, but a right to retain property as security for a debt. 'A lien', says Mr. Justice Buller, 'is a personal right, and can not be transferred to another.'" Again he says: "A transfer of the property, while the assignor retains the lien debt, destroys the lien, unless the transfer be merely to an agent of the assignor to hold for him, subject to the lien." Also, that "a lien is a purely personal privilege, and can only be set up by the person to whom it accrued. He can not assign his claim, so as to enable the assignee to set up the lien as a ground of claim or defense to an action for the property or its value as against the general owner." The case of *Ruggles* v. *Walker*, 34 Vt. 468, is illustrative of the principle under consideration. There a manufacturer of starch had a lien for the price of manufacturing several tons of starch for one who had furnished the materials. The latter was not ready to receive and pay for the starch when it was ready for delivery. He obtained from a third person the amount of his claim and delivered the starch to him, marking it with the name of such third person. The person to whom the starch was delivered notified the owner that he had purchased the manufacturer's claim, and that he could have the goods by paying what he had agreed to pay the manufacturer. The owner took possession of the starch without paying the price for its manufacture. The person who had made the advances upon it and to whom it

Glascock *v.* Lemp.

had been delivered brought suit, declaring in trespass and trover for taking and converting the starch to his own use. It was held that he could not maintain the suit because the lien was a personal privilege which the original holder could not sell or transfer except with the consent of the general owner of the property. In harmony with the case just cited, are the following: *Bradley* v. *Spofford,* 23 N. H. 444; *Lovett* v. *Brown,* 40 N. H. 511; *Jacobs* v. *Knapp,* 50 N. H. 71; *Roberts* v. *Jacks,* 31 Ark. 597; *Daubigny* v. *Duval,* 5 T. R. 604; *Holly* v. *Huggeford,* 8 Pick. 73; *Tewksbury* v. *Bronson,* 48 Wis. 581, 4 N. W. 749; *Caldwell* v. *Lawrence,* 10 Wis. 273.

The lien which Simms had depended upon possession. A voluntary surrender of possession in such case destroys the lien. See *Bierly* v. *Royse,* 25 Ind. App. 202, and authorities there cited. Simms voluntarily surrendered the possession of the property to a third person, not as his agent, and for him and in his name to hold the property and enforce the lien, but surrendered it absolutely, with an assignment of his claim for feeding and caring for the animal. The lien was not created for, nor could it inure to, the benefit of the appellee. The latter did nothing to entitle him to a lien. In 13 Am. & Eng. Ency. of Law (1st ed.) 624, it is said: "A lien is neither property nor a debt, * * * and is not the subject of sale or assignment." It is only where the existence of a lien does not depend upon possession that it can be assigned and the assignee be empowered to enforce it. If the lien depends upon possession, it is not assignable. 13 Am. & Eng. Ency. of Law, 625. Jones on Liens, §990. See, also, Watson on Stat. Liens, §1480, and authorities there cited. In New York it was held that one who had a stable keeper's lien on a horse and sells his stable and allows the purchaser to take possession of the horse, he thereby waived his lien unless he made some arrangement by which the horse was to be held for his benefit. *Fitchett* v. *Nanary,* 14 N. Y. Supp. 479. Mr. Watson, in

his work on Statutory Liens, at §877a, says: "Liverymen's liens, while created wholly by statute, depend upon possession for their existence, and are therefore not assignable." The rule seems to be in such case that loss of possession is loss of lien. Watson on Stat. Liens, §81; *Bierly* v. *Royse, supra; Tucker* v. *Taylor,* 53 Ind. 93; *Holderman* v. *Manier,* 104 Ind. 118; *Walls* v. *Long,* 2 Ind. App. 202.

Additional argument or authorities seem useless. It follows that the question propounded, and which precedes the discussion, must be answered in the negative. The judgment is reversed, and the court below is directed to restate its conclusions of law in harmony with this opinion.