Peter W. TERPSTRA, Sr., Appellant,

v.

FARMERS AND MERCHANTS BANK, Rochester, Indiana, Howard R. Wertzberger, Kathleen Wertzberger, Glenn A. Skersick, Marjorie Skersick, William J. Gordon, Joan C. Gordon, Virginia Lorene Rauschke, Charles H. Rauschke, R. Wayne Smith, Virginia V. Smith, H. Robert Bradley, Elizabeth Ann Bradley, J. Frederick Hoffman, Patricia B. Hoffman, Appellees.

No. 3–1284A340PS.

Court of Appeals of Indiana, Third District.

Sept. 30, 1985.

Rehearing Denied Dec. 13, 1985.

Peter W. Terpstra, Sr., pro se.

E. Spencer Walton, Jr., Robert J. Palmer, South Bend, for Farmers & Merchants Bank, et al.

STATON, Presiding Judge.

Peter W. Terpstra, Sr. (Terpstra) appeals *pro se* from an adverse summary judgment and a declaratory judgment voiding numerous common law liens that he had filed against certain Fulton County real property owners (Owners) and the Farmers and Merchants Bank (Bank). In our review of this appeal we must address four issues, which have been restated. They are as follows:

(1) Whether Terpstra's failure to fully comply with certain Appellate Rules is fatal to this appeal?

(2) Whether Terpstra's common law liens are valid?

(3) Whether the trial court in equity had jurisdiction in this matter that Terpstra insists is a matter at law?

(4) Whether Terpstra was unconstitutionally denied assistance of counsel of this choice?

Affirmed.

## I.

### Noncompliance

The present controversy stems from a lawsuit filed by Terpstra and his son on April 17, 1984, in the United States District Court, Northern District of Indiana, Civil No. S84-0217. There Terpstra alleged claims of breach of contract, fraud, usury, and conspiracy against the Owners. That same day Terpstra filed with the Fulton County Recorder, Anne Clay, his "Claim of Common Law Writ of Attachment with Memorandum of Law." He also filed instruments numbered 3863 through 3879 which purported to be common law liens on the real estate belonging to the Owners.[1] Owners and the Bank brought suit against Terpstra, who appeared *pro se*, and they received a favorable summary judgment. The trial court also declared instruments 3863 through 3879 to be null and void.

At the onset we note our belief that the common denominator for all of the issues before us is Terpstra's failure to grasp the legal principles germane to this lawsuit. Terpstra's brief and reply brief reflect the careful typing effort put into them, but lacking are sound legal arguments supported by persuasive authority. A layman who merely extracts a sentence or two from a case containing language believed to be relevant risks the very grave danger of misstating the law or reaching inappropriate legal conclusions. A sincere subjective belief by a party as to the correctness of his argument is not enough to ensure success when, as here, the arguments are broad, abstract and contrary to current law. Terpstra's lack of trained legal counsel surely contributed to the substantive and procedural flaws evident in his briefs.[2]

---

1. Terpstra also filed with the Fulton County Recorder a "Claim of Common Law Writ of Attachment with Memorandum of Law" naming Farmers and Merchants Bank.

2. The trial judge made a similar observation, and in his memorandum accompanying his Summary Judgment and Order Judge Morton wrote:

"Parties often seek to represent themselves when they are defending litigation; while normally such individuals have difficulty in properly addressing a Court's concerns or otherwise complying with the Court's expectation of parties, it is marginally feasible for an individual untrained in the law to appropriately handle such a defense. It is quite another burden however to successfully seek court action against another individual when a plaintiff is seeking the Court for a judgment or an order against the party defendant; the expectations of to how to successfully obtain such relief are substantially higher and it is much more unlikely that individuals untrained in legal practice will ever clear the necessary hurdles. This Court senses a frustration on the part of the defendant Terpstra as he seeks to press for and obtain an adjudication as it relates to his economic theory and/or political theory. Advocacy by an attorney willing to represent the position will be the only opportunity that the defendant has of presenting his case, or probably, of getting a serious hearing on the merits of his argument.

\* \* \* \* \* \*

This Court will note that the procedural rule to successfully prosecuting an appeal are

The Owners and the Bank have directed our attention to the obvious, that Terpstra's brief is not in compliance with various Appellate Rules. Specifically, Terpstra's brief did not contain a verbatim statement of the trial court's judgment as required by Ind.Rules of Procedure, Appellate Rule 8.3(A)(4).[3] Nor did Terpstra's brief comply with AP. 8.3(A)(5)[4] which requires a statement of facts relevant to the issues presented for review. Owners and the Bank also contend that Terpstra's brief failed to contain a cogent argument as required under AP. 8.3(A)(7).[5]

Terpstra's counter-argument, in its entirety, is as follows:

## "ISSUE I

DEFENDANT TERPSTRA SHOULD NOT BE DENIED HIS APPEAL DUE TO A FAILURE TO COMPLY WITH THE APPELLATE RULES.

Defendant Terpstra has made a good faith effort to comply with all the rules concerning the preparation of this appeal.

As there are no jurisdictional defects and Defendant Terpstra is appealing violations of his constitutional rights, he should not be denied his Appeal for mere technical defects.

The denial of a man's rights supercedes technicalities especially where efforts were made to comply. The U.S. Supreme Court stated in *Miranda vs. Arizona*:

'Where *rights* secured by the *Constitution* are involved, there can be no rule-making or legislation which would abrogate them.' (Emphasis added). *Miranda vs. Arizona.* 384 US 436, 491 [86 S.Ct. 1602, 1636, 16 L.Ed.2d 694 (1966)].

WHEREFORE, Defendant Terpstra respectfully requests this court not to deny his appeal."

(Appellant's Reply Brief, p. 2).

We will now, in turn, address AP. 8.3(4), (5) and (7) as they pertain to Terpstra's briefs.

### A.

#### Omitted Statement

■ When parties commit flagrant violations of the Rules of Appellate Procedure or fail to at least make good faith efforts to substantially comply with the rules, an appellate court will dismiss an appeal or waive issues. *Sartain v. Blunck* (1983), Ind.App., 453 N.E.2d 324, 325; *Vicarro v. City of Fort Wayne* (1983), Ind.App., 449 N.E.2d 1161, 1162; *Moore v. State* (1982), Ind.App., 441 N.E.2d 220, 221, *reh. den.* Terpstra's failure to include a verbatim statement of the trial court's judgment in his appellate brief is a technical violation of AP. 8.3(A)(4), however, affirmance of the

numerous indeed and far more stringently enforced than any procedural hurdles in trial courts. If there is to be success in raising the defendant's economic and or political arguments, the Court can only urge that a rethinking as to the method of obtaining that hearing will most assuredly have to be undertaken; the presently charted course is obviously going to be a waste of resources."
(R. 43–44).

**3.** Ind.Rules of Procedure, Appellate Rule 8.3(A)(4) provides:
"A statement of the case. The statement shall first indicate briefly the nature of the case, the course of proceedings, and its disposition in the court below, including a verbatim statement of the judgment."

**4.** AP. 8.3(A)(5) provides:
"(5) A statement of the facts relevant to the issues presented for review, with appropriate

references to the record. The statement need not make references to parts of the record not particularly related to or involved in the error claimed."

**5.** AP. 8.3(A)(7) provides, in pertinent part:
"An argument. Each error assigned in the motion to correct errors that appellant intends to raise on appeal shall be set forth specifically and followed by the argument applicable thereto. . . .
The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review."

trial court's decision based solely on this omission is not mandatory. On this point, Chief Judge Robertson has written:

> "We recognize that, for proper judicial review of certain case, adherence to the commands of AP. 8.3(A)(4) is highly important and approaches necessity; however, in our opinion, the omission in this case, though by no means insignificant, does not present such compelling circumstances. With respect to the facts of the present case, the relief granted, summary judgment, was not complicated and the judgment of the trial court was essentially implicit in the mere fact of the appeal. *See Suess v. Vogelgesang,* [(1972)] *supra* [151 Ind.App. 631, 281 N.E.2d 536]; *Smith v. Chesapeake and Ohio Railroad Company* (1974), [160] Ind.App. [256], 311 N.E.2d 462."

*Randolph v. Wolff* (1978), 176 Ind.App. 94, 95–96, 374 N.E.2d 533, 534.

■ In the present case, Terpstra's omission is a more serious violation than that in *Randolph*. Here, accompanying the trial court's decision, there was a lengthy memorandum written by the judge explaining his rationale. This omitted portion of Terpstra's brief is critical to our review of the matter. We again note that we have the discretionary power to affirm the trial court for a violation of AP. 8.3(A)(4), *Morris v. State* (1982), Ind.App., 433 N.E.2d 74, 77, but we decline to do so here in order to reach the merits of Terpstra's claim. *See Pinkler v. State* (1977), 266 Ind. 467, 472, 364 N.E.2d 126, 128–29 (right to invoke sanction of this rule belongs to reviewing court for whose benefit the rule was intended).

### B.

#### Inadequate Statement of Facts

We conclude that Terpstra's brief was also violative of AP. 8.3(A)(5). The entire text of Terpstra's Statement of Facts contained in his brief is as follows:

"STATEMENT OF THE FACTS

Defendant had at all times acted in propria persona and claimed all of his unalienable God-given rights under the United States Constitution, The Indiana Constitution and the common law. (Tr. pp. 7, 37, 48, 73–74).

Defendant had at all times challenged jurisdiction of a court sitting in equity over this common law matter, (Tr. pp. 7, 10, 16, 19, 22, 37, 48).

Plaintiffs at all times had a remedy at law.

Defendant was denied the assistance of counsel of his choice for his defense. (Tr. p. 73).

The case was decided upon the Plaintiffs' Motion For Summary Judgment. (Tr. pp. 25–26)."

(Appellant's Brief, p. 5).

■ The above quoted portion of Terpstra's brief represents subminimal compliance with the rule. The statement of facts in an appellate brief is to a narrative statement supported by references to the record which are relevant to the issues discussed. *Miller v. State* (1983), Ind.App., 449 N.E.2d 1119, 1120; *State v. Fair* (1981), Ind.App., 423 N.E.2d 738, 739. In the instant case, Terpstra has merely strung together disjointed statements which were argumentative rather than factual. *Moore v. State* (1981), Ind.App., 426 N.E.2d 86, 89–90 (statement of facts should be informative not persuasive). Terpstra's brief fails to pass muster under the requirement that each appellant's brief be prepared so that a judge, considering the brief alone and independently from the record, can intelligently consider each question presented. *Anderson v. Indiana State Employees' Appeals Comm'n.* (1977), 172 Ind.App. 529, 533, 360 N.E.2d 1040, 1043, *trans. den.* Nonetheless, we have chosen to reach the merits of the instant case despite the failure of Terpstra's brief to comply with this rule.

### C.

#### Failure to Present Cogent Argument

■ In essence, the alleged violation of AP. 8.3(A)(7) by the Owners and the Bank is based on the unpersuasive authorities

Terpstra offered to support his arguments. We note that it is well settled that where appellants fail to cite any authority in support of their arguments, the issues are waived. *Hunt v. State* (1983), Ind., 455 N.E.2d 307, 316; *Courtesy Enterprises, Inc. v. Richards Labs* (1983), Ind.App., 457 N.E.2d 572, 580. That is not, however, the case here. Although the argument portion of the brief leaves much to be desired, under a liberal construction of the rules, it cannot be said that points and authorities were not discussed. *Eves v. Ford Motor Co.* (1972), 152 Ind.App. 34, 38, 281 N.E.2d 826, 828, *trans. den.* Terpstra's brief is peppered with citations to the United States Constitution, Supreme Court cases, Indiana Statutes, one Indiana case, a 1935 Indiana Attorney General Opinion, and a law encyclopedia. Terpstra has provided us with authority in support of his arguments, however, in the context in which they were used, his authorities were not legally persuasive. Since we have decided to proceed to the merits of this appeal, we will discuss these citations in our treatment of the remaining issues, *infra.*

■■■ In deciding whether or not Terpstra has complied, or at least substantially complied, with the requirements of the rules for the preparation of an appellate brief, our standard is whether the non-compliance is sufficiently substantial to impede consideration of the issues raised. *Davis v. State* (1976), 265 Ind. 476, 478, 355 N.E.2d 836, 838. We are mindful that Terpstra is proceeding in this litigation *pro se,* but that fact alone does not excuse him from complying with appellate rules. *Bedree v. Larson* (1979), 181 Ind.App. 270, 272, 391 N.E.2d 670, 671. We also have the option of ordering Terpstra to file a new brief which does comply with AP. 8.3, *e.g., Brotherhood's Relief & Compensation Fund v. Smith* (1971), Ind.App., 269 N.E.2d 191, *reh. den.,* but we will not exercise that option here.

The purpose of AP. 8.3 is to aid and expedite review and relieve the appellate court of the burden of searching the record and briefing the case. We will not become an advocate for a party, nor will we address arguments which are either inappropriate, too poorly developed or improperly expressed to be understood. We believe that Terpstra, however feebly, has made a good faith attempt to compile his briefs, and we conclude that, in spite of their deficiencies, we are not substantially impeded from reaching to the merits of this appeal. We add, however, that one who proceeds *pro se* must accept the consequences of his action. *Morivilius v. Delaware Circuit Court* (1961), 241 Ind. 704, 171 N.E.2d 695, 696.

## II.

### Common Law Liens

The underlying subjects of this appeal are the liens Terpstra had recorded in Fulton County. The best explanation of Terpstra's actions is found in the exchange between the trial court and Terpstra which took place at the hearing on the motion for summary judgment.

"MR. TERPSTRA

I filed a suit in Federal court at law. Now if I'd have filed that suit in Federal court in equity, I could have come down here to the Recorder's office and filed a lis pendens. Then I suppose everybody would have been happy, but no, I filed at law under the common law and because I'm exercising my common law rights. I filed those liens under the common law. That's a common law right and rights are property and liens are property and I contend that I have a constructive lien. I didn't just go in there hap-hazardly and file the lien. First those people were sent a notice and demand. I told them of the charges I had against them. They had twenty days to answer. They did not admit nor did they deny. It was only then that I filed suit in Federal court and only after I filed that suit did I take my common law rights and file the liens down here to protect my interests.

COURT

What stage is the litigation in South Bend?

MR. TERPSTRA

Well, it's in limbo in Federal court.

COURT

It's not been resolved yet and it's still pending?

MR. TERPSTRA

No, because of the issue I don't think it's one they want to handle very quick so it will probably sit there for awhile.

\*     \*     \*     \*     \*     \*

COURT

If I understand what you're saying, Pete, you are suggesting that if you had filed an equitable suit in South Bend, you could have filed here what we call a lis pendens and that would be a procedure that we are all, frankly, familiar with?

MR. TERPSTRA

Correct."

(R. 75–76).

▉ In Indiana, a "lien" is a claim which a person holds on another's property as a security for an indebtedness or charge. *Hubble v. Berry* (1913), 180 Ind. 513, 519, 103 N.E. 328, 330. Where there is no debt, however, in the absence of law, a lien cannot exist. *Willard v. Stauffer* (1930), 91 Ind.App. 119, 127, 170 N.E. 332, 335. An examination of the record before us does not reveal any debt in existence owed by the Owners or the Bank to Terpstra. Terpstra has merely filed a tort claim against the Owners, which has yet to proceed to judgment. A pre-judgment tort claim is not a debt, and to treat it as such would be improper. *See Fuentes v. Shevin* (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (states procedure was improper under which a creditor could obtain a pre-judgment writ of replevin through *ex parte* application to a court clerk upon posting bond for double the value of the property to be seized); *Sniadach v. Family Finance Corp.* (1969), 395 U.S. 337, 339–42, 89 S.Ct. 1820, 1821–22, 23 L.Ed.2d 349 (pre-judgment garnishment procedure was violative of fundamental principles of due process).

Terpstra's position is that he has validly recorded common law liens in Fulton County. We do not agree, and we quote from an earlier Court of Appeals' opinion which discussed common law liens.

"Originally the word 'lien' was used to signify the right which certain mechanics and artisans had to retain the chattel upon which they had performed labor, or had given it some particular care at the request of the owner directly or impliedly, until they had been paid for such labor performed; hence this so-called lien has long been recognized under well-defined, common-law principles independent of any statutory provisions.

\*     \*     \*     \*     \*     \*

In cases of common-law liens, in order that such lien may be kept alive, it is absolutely essential that the person claiming the lien should retain and hold an independent and exclusive possession of the particular chattel. Whenever he voluntarily surrenders its possession his lien is lost, and he then has only the right of action against the person contracting for the work and supplies for the value of the same. 1 Jones, Liens (3d ed.) §§ 731, 745, 749; *Tucker v. Taylor* (1876), 53 Ind. 93; *Glascock v. Lemp* (1900), 26 Ind.App. 175, 59 N.E. 342; *Bierly v. Royse* (1900), 25 Ind.App. 202, 57 N.E. 939."

*Vaught v. Knue* (1917), 64 Ind.App. 467, 470–71, 115 N.E. 108, 109, *trans. den.*

▉ It appears then, that in order for Terpstra to have a valid common law lien, two elements are necessary—debt and possession. In the instant case, both elements are missing. Thus, Terpstra's writs of attachment can have no validity because they purport to extend beyond whatever interest Terpstra has in the Owners' land. *See Shirk v. Thomas* (1889), 121 Ind. 147, 150, 22 N.E. 976, 977 (lien of a judgment or attachment does not extend beyond the interest of the debtor in the land).

Although common law liens are still recognized in Indiana, *e.g., Hendrickson & Sons Motor Co. v. Osha* (1975), 165 Ind. App. 185, 203, 331 N.E.2d 743, 757, *trans. den.* (garageman's lien), in order to have a

legal remedy for the enforcement of a common law lien, statutory authority must exist. In other words, today common law liens are creatures of statute [6], and, when there is no express statute authorizing a lien on land, an instrument purporting to do so is void.

Our statutes do provide some protection for a party who files suit. A party could file a notice under IC (1973), 34–1–4–2 (Burn's Code Ed., Supp.1985) in the *Lis Pendens* Record.[7] The purpose of *lis pendens* is to provide notice to those who might become successors in interest to the present parties in a lawsuit, that they must abide by the outcome of the lawsuit. *Carr v. Stebbins* (7th Cir., 1923), 292 F. 747, 750. In the instant case, Judge Morton wrote in his memorandum accompanying his Summary Judgment and Order, that:

"If a lis pendens filing were timely, then clearly this would be the method available for making a record as defendant has described. Since however, the action in South Bend Federal District Court is not an action 'enforce any lien upon, right to, or interest in any real estate' but instead is simply a potential law suit judgment against the defendants, then a lis pendens filing or its equivalent would have also been premature and inappropriate. The creation of a lien, in an action of this type, must await judgment in the primary case."

(R. 42).

Also available to a party in a lawsuit is IC (1973), 34–1–11–1 (Burn's Code Ed.) which provides in relevant part:

"The plaintiff, at the time of filing his complaint, or at any time afterwards, may have an attachment against the property of the "defendant, in the cases and in the manner hereinafter stated, where the action is for the recovery of money:"[8]

---

**6.** *See e.g.,* IC 1980, 32–8–21–1 (Burn's Code, Supp., 1985) (Blacksmith's lien); IC 1980, 32–8–31–1 (Burn's Code Ed.) (Mechanic's lien).

**7.** IC 1973, 34–1–4–2 (Burn's Code Ed., Supp., 1985) provides:

"(a) When a suit is commenced upon any bond payable to the state of Indiana in any of the courts of this state or in a district court of the United States sitting in the state of Indiana, it shall be the duty of the plaintiff in the case to file with the clerk of the circuit court a written notice containing the title of the court, the names of all parties to the suit, and a statement that it is upon an official bond.

(b) When a person commences a suit:

(1) In any of the courts of this state or in a district court of the United States sitting in the state of Indiana;

(2) Whether by complaint as plaintiff, or by cross-complaint as defendant; and

(3) To enforce any lien upon, right to, or interest in any real estate upon any claim not founded upon:

(A) An instrument executed by the party having the legal title to such real estate, as appears from the proper records of such county, and recorded as by law required; or

(B) A judgment of record in the county wherein such real estate is situated, against the party having the legal title to such real estate, as appears from such proper records; it shall be the duty of such person to file with the clerk of the circuit court in each county where the real estate sought to be affected is situated, a written notice containing the title of the court, the names of all the parties to such suit, a description of the real estate to be affected, and the nature of the lien, right, or interest sought to be enforced against the same.

(c) Upon the payment of the recording fee specified in IC 33–17–10–13, the clerk shall record a notice filed under subsection (a) or (b) in the 'Lis Pendens Record' and shall note upon the record the day and hour when said notice was filed and recorded."

**8.** The causes for attachment listed in IC 1973, 34–1–11–1 (Burn's Code Ed.) are as follows:

"First. Where the defendant, or one of several defendants, is a foreign corporation or a nonresident of this state;

Second. Where the defendant, or one of several defendants, is secretly leaving or has left the state, with intent to defraud his creditors; or,

Third. So conceals himself that a summons cannot be served upon him; or,

Fourth. Is removing or about to remove his property subject to execution, or a material part thereof, out of this state, not leaving enough therein to satisfy the plaintiff's claim; or,

Fifth. Has sold, conveyed, or otherwise disposed of his property subject to execution, or suffered or permitted it to be sold with the fraudulent intent to cheat, hinder or delay his creditors; or,

Sixth. Is about to sell, convey or otherwise dispose of his property subject to execution,

This section authorizes attachment in tort actions for damages. *Shedd v. Calumet Const. Co.* (7th Cir., 1921), 270 F. 942, 944.

Because Terpstra's common law liens were recorded by the county clerk, their legal effect is a cloud on the Owners' titles, which affects the marketability of their titles.[9] According to statute:

"The recorder shall record in books all instruments that are proper for recording, in the order in which they are received in his office for record. He shall record deeds and mortgages in separate books."

IC (1981), 36–2–11–8 (Burn's Code Ed.).

We believe that the statute's mandate to record "all instruments that are proper for recording," is a procedural rather than a substantive one, and that the county clerk who recorded Terpstra's instruments should not be liable. To conclude otherwise would place recording clerks in the precarious position of facing possible liability for filing or failing to file instruments presented to them. The better position is to allow clerks to file so that they will not be open to suits for non-performance of their duties. Allowing clerks to file also protects them from liability should an innocent purchaser later have to defend against a lien. *See Van Natta v. Crites* (1978), 178 Ind.App. 113, 381 N.E.2d 523, *reh. den.* (liability for failure to record a lien on the title to an automobile).

■ A property owner who has a lien recorded against his title is not without recourse. Clouds upon a title cast doubt on the owner's title, which affect its market value, and owners can sue to have such clouds removed. Quiet title actions are a statutory as well as an equitable remedy. *See* IC (1980), 32–6–4–1 (Burn's Code Ed.) (defect in title—proceedings to quiet); *Wal-*

*ter v. Hartwig, et al.* (1885), 106 Ind. 123, 124, 6 N.E. 5 (quiet title action upheld to cancel an instrument that should have not gone in the record); *Reeves, Guardian v. Hayes, et al.* (1884), 95 Ind. 521, 522 (recorder's action were a nullity). Another possible action by an owner with a spuriously clouded title is a retaliatory suit for slander on title. *See Gintert v. Howard Publications, Inc.* (D.C.Ind., 1983), 565 F.Supp. 829 (slander of title defined); *Freiburger v. Fry* (1982), Ind.App., 439 N.E.2d 169 (what is needed to prove slander of title); *Display Fixtures Co, etc. v. R.L. Hatcher, Inc.* (1982), Ind.App., 438 N.E.2d 26 (essential elements of slander of title action); *Curry v. Orwig* (1981), Ind.App., 429 N.E.2d 268, *trans. den.* (slander of title and *lis pendens*); *Harper v. Goodin* (1980), Ind.App., 409 N.E.2d 1129 (punitive damages available for slander of title).

Our conclusion on this issue then, is that Terpstra was without authority to file the instruments identified as writs of attachment or common law liens. Such instruments were properly recorded by the county recorder, but they were a mere nullity without any legal effect. The Owners and the Bank have properly brought suit to remove the clouds on their titles, and the trial court did not err in finding that Terpstra's instruments were invalid and ordering them null and void.

## III.

### Jurisdiction

We turn next to the question of whether or not the trial court in equity had jurisdiction over a matter Terpstra insists is a matter at law. The record reveals that Terpstra's rationale for raising this issue is as follows:

"MR. TERPSTRA

---

with such intent. Provided, That the plaintiff shall be entitled to an attachment for the causes mentioned in the second, fourth, fifth and sixth specifications of this section, whether his cause of action be due or not."

9. Common law liens as a litigation tactic has been addressed in the following cases from other jurisdictions: *United States v. Van Dyke* (D.C.

Or., 1983), 568 F.Supp. 820 (tax protestors file common law liens against IRS employees); *Johnson v. Murray* (1982), Mont., 656 P.2d 170 (defendant filed liens on real property owned by supervisor of a police officer who issued a traffic ticket); *Shutt v. Moore* (1980), 26 Wash.App. 450, 613 P.2d 1188 (common law liens filed against State officials seeking to collect taxes).

I have a couple of matters to bring to the attention of the Court, your Honor.

For the record, is this hearing setting in equity according to the civil law or at law under the rules of the courts of the common law?

COURT

Is that a question or was that a rhetorical....?

MR. TERPSTRA

That was a question. I would like to have a determination.

COURT

This is an equity jurisdiction case, yes.

MR. TERPSTRA

Let the record show that I object to this court of equity setting over this common law matter and I demand this hearing be dismissed for want of jurisdiction.

COURT

Well, if I don't have jurisdiction over it, who does?

MR. TERPSTRA

Well, if the plaintiffs [Owners and Bank] were serious about coming to this Court, all of my pleadings have been at law, to the common law. They could have had on their complaint that said 'Complaint in Equity'.... they could have had 'Complaint at Law, to the Common Law ... jury trial demanded.

All I am asking is to have this matter settled before a jury that has the right to decide the law as well as the facts.

COURT

A lien proceedings is, as I understand it, a proceeding in rem ... a proceeding against property ... and those, as I understand it, together with the kind of request for relief that is being filed here, makes any kind of proceedings such as this—an equity proceeding.

I set [*sic*] in here yesterday and granted four divorces. Those were equity proceedings.

If I don't have equity jurisdiction to grant non-money relief, non-cash money relief, and since as I understand it, the Constitution very clearly sets out that we are to proceed with both equity and law jurisdiction ... if I can't, who can?

\*   \*   \*   \*   \*   \*

MR. TERPSTRA

Well, I say there is a vast difference between at law and equity. If you've read my briefs, you can see that there is.

COURT

Well, of course, there is, but are not the circuit courts of the county the court's general jurisdiction and therefore contain both equitable and.......?

MR. TERPSTRA

Yes, I will agree that you can hear an at law case or an equity case, but it must be distinguished what it is. Is it in equity or is it at law?

COURT

Well, it's in equity. This one is in equity.

MR. TERPSTRA

I am saying it should be at law. If they were to come in here and ask to come at law.... if they were to come in equity, they should have come in with clean hands. They should have asked or to come in equity with clean hands. They have not done that. It says here 'The Courts of the United States are bound to recognize and enforce this common law'. *U.S. v. Marchant*, 25 U.S. [(Wheaton)] 480 [6 L.Ed. 700 (1827)] ....

\*   \*   \*   \*   \*   \*

COURT

What kind of relief at law could they [Owners and Bank] have sought?

MR. TERPSTRA

At law—the jury decides the law'and the facts. I am asking a jury to determine this. If the jury setting over here says that I'm wrong, I will beat a path right down to the Recorder's office and release those liens immediately. All I am asking is for a jury—a common law jury—one that can decide the laws as well as the facts—to say that either I'm right or I'm wrong. I have no animosity

towards these people—even though I feel that I have been wronged."

(R. 68–70, 74).

Succinctly put, Terpstra contends that because a remedy was available at law, that remedy being a jury trial, the Owners and the Bank have no remedy in equity available to them. In his reply brief, Terpstra argues this point as follows:

"The only way this court of equity could possibly have had jurisdiction over the subject matter would have been for plaintiffs to have asked for, proven and come to equity with clean hands which plaintiff have been unable to do, or for defendant *not* to have objected timely. If defendant objects timely (which this defendant has done) the equity court should have no authority to proceed." (Original emphasis.)

(Appellant's Reply Brief, p. 3).

In his memorandum, Judge Morton explained this issue as follows:

"The entire argument forwarded by the defendant suggests that this Court must proceed at law, not in equity because of the nature of his original filing in South Bend Federal District Court. Such a position however, overlooks the present day method of handling legal proceedings; that method is expressed at Indiana Trial Rule 1 and 2 and are basic to our entire system of jurisprudence at this time ..."[10]

We add to that explanation what the Court of Appeals wrote in *Hiatt v. Yergin* (1972), 152 Ind.App. 497, 284 N.E.2d 834, *trans. den.*, distinguishing between equity and law for purposes of determining a party's right to a jury trial:

"We now turn to the Indiana precedents specifically determining the right to jury trial in causes where one or more of the issues of fact are of exclusive equitable jurisdiction and others are not. The cases are confusing. However, the tendency to deny jury trial in these circumstances is a common thread that runs through most of them.

Typical is *Towns v. Smith*, [ (1888) 115 Ind. 480, 16 N.E. 811] *supra*, where the court announced as early as 1888 that '*if any essential part of a cause* is exclusively of equitable cognizance, the *whole* is drawn into equity' (emphasis supplied) and tried without a jury. *Jones Drilling Corporation v. Rotman*, (1964) 245 Ind. 10, 195 N.E.2d 857; *Field v. Brown*, [ (1896) 146 Ind. 293, 45 N.E. 464] *supra; Hendricks v. Frank*, (1882) 86 Ind. 278; *Lake v. Lake*, (1884) 99 Ind. 339; *Quarl v. Abbett*, (1885) 102 Ind. 233, 1 N.E. 476; *Watson v. Watson*, (1952) 231 Ind. 385, 108 N.E.2d 893; *Gilot v. Walsh*, (1968) 142 Ind.App. 628, 236 N.E.2d 607."

*Hiatt*, 152 Ind.App. at 517–18, 284 N.E.2d at 845.

▪ In the instant case, the nature of the Owner's claims was not an action for monetary damages, which would be appropriate for an at-law proceeding. Instead, the present litigation involved title to real estate, an equitable concern. *See McClamroch v. McClamroch* (1985), Ind.App., 476 N.E.2d 514, 519, *reh. den.* The claim for relief, that Terpstra's liens be declared void and that they be removed from the record, is quite clearly an equitable one, and given that the Fulton Circuit Court is a court of general jurisdiction, it has the inherent equity power to properly order such relief.[11]

---

**10.** Ind.Rules of Procedure, Trial Rule 1 provides:

"Except as otherwise provided, these rules govern the procedure and practice in all courts of the state of Indiana in all suits of a civil nature whether cognizable as cases at law, in equity, or of statutory origin. They shall be construed to secure the just, speedy and inexpensive determination of every action."

Trial Rule 2 provides:

"(A) There shall be one (1) form of action to be known as 'civil action.'

(B) The right of a civil action is not merged in a public offense or a public remedy, but may, in all cases, be sought independently of and in addition to the punishment given or relief granted for the public offense."

**11.** This appeal is from the award of a Summary Judgment, Ind.Rules of Procedure, TR. 56, in favor of the Owners and the Bank. The critical inquiries in summary judgment are whether there is an absence of genuine issue of material fact and whether the judgment is based upon a

*Blake v. Blake* (1979), 181 Ind.App. 304, 391 N.E.2d 848, 853; *State ex rel. Root v. Circuit Court of Allen County* (1972), 259 Ind. 500, 506, 289 N.E.2d 503, 507. For all of the above reasons, we are convinced that the lower court did in fact have proper jurisdiction in this matter, and we correspondingly find no error.[12]

## IV.

### Counsel of Choice

Finally, we must address Terpstra's claim that he was unconstitutionally denied counsel of his choice by the trial court judge. At the hearing on the motion for summary judgment, Terpstra requested the assistance of two other people, neither of which had been admitted to practice law in Indiana. Because of this denial, Terpstra claims he was denied a meaningful trial.

■ It should be undisputed, even by Mr. Terpstra, that the present case is a civil matter. Unlike criminal cases, where defendants have a 6th or 14th Amendment right to counsel, in civil proceedings persons do not have those same rights. *Wirgau v. State* (1982), Ind.App., 443 N.E.2d 327, 330–31, *trans. den.; Steward v. State* (1982), Ind.App., 436 N.E.2d 859, 862, *trans. den.*

It is also untrue that Terpstra had the right to have a non-attorney represent him. This issue was raised in another case, *State ex rel. Medical Licensing Bd. v. Stetina*

(1985), Ind.App., 477 N.E.2d 322. There Judge Ratliff wrote:

"There is no constitutional right to representation by lay counsel. *Thomas v. Estelle* (5th Cir.1979), 603 F.2d 488, 489; *United States v. Taylor* (7th Cir.1977), 569 F.2d 448, 451, *cert. denied* 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803; *Turner v. American Bar Association* (N.D. Tex.1975), 407 F.Supp. 451, 483 (contains discussion rebutting precisely same arguments raised by Stetina); *see also Fair v. Givan* (N.D.Ind.1981), 509 F.Supp. 1086, 1090 (regarding lay representation of criminal defendant); *Owen v. State* (1978), 269 Ind. 513, 518, 381 N.E.2d 1235, 1238 (also concerns lay representation of criminal defendants). Any other rule would in effect put this court in the position of sponsoring the unauthorized practice of law."

*Stetina*, 477 N.E.2d at 328.

■ In the present case, Terpstra requested that, "... my counsel be permitted to set (sic) with me and help me with my notes and papers and to proceed.) (R. 71). It is not clear from this request what kind of assistance Terpstra intended to receive from his "counsel".[13] If Terpstra's unlicensed counsel was allowed to sit at the counsel table and offer him legal advice, then "counsel" would be in violation of our state statute prohibiting the unauthorized practice of law,[14] and the judge would be aiding a non-lawyer in the unauthorized practice of law.[15] Such conduct would

---

question of law. These inquiries would be the same whether in law or in equity.

**12.** Terpstra's claim that he was denied a jury trial in violation of his United States Constitutional rights is wrong. As written in *Hiatt, supra:*

"As the Seventh Amendment to the United States Constitution applies only to civil trials in federal courts, the states are free to develop their own body of law concerning the right to trial by jury in civil matters."

*Hiatt,* 152 Ind.App. at 522–23, 284 N.E.2d at 849.

**13.** Terpstra requested that Mr. Minarik and his son, P.W. Terpstra, II, both of whom are not licensed attorneys, become his "counsel." Neither man is a party to this lawsuit.

**14.** IC 1975, 33–1–5–1 (Burns Code Ed.) provides that:

"It is a class B misdemeanor for a person to hold himself out as a practicing lawyer, to conduct the trial of a case in any court of this state, or to engage in the business of a practicing lawyer, without first having been duly admitted as an attorney-at-law by the supreme court of this state."

The phrase, "practice of law," was explained in *Fink v. Peden* (1938), 214 Ind. 584, 17 N.E.2d 95.

**15.** Ind.Rules of Procedure, Professional Responsibility DR 3–101(A) provides:

"A lawyer shall not aid a non-lawyer in the unauthorized practice of law."

squarely be forbidden under the teachings of *Stetina, supra,* and the cases cited thereunder. On the other hand, if "counsel" was to function merely in a clerical capacity assisting Terpstra to organize his materials, then it may have been permissible for Terpstra's "counsel" to sit at the counsel table and be of secretarial help to him. A trial judge has control over the proceedings in his court, and his duty is to conduct business expeditiously consistent with orderly procedure and the administration of justice. *Kroll v. Smith* (1957), 127 Ind.App. 178, 182, 139 N.E.2d 573, 575–76. Matters which relate to the orderly conduct of trial not regulated by precise statute or rule are within the sound discretion of the court. *City of Bloomington v. Holt* (1977), 172 Ind.App. 650, 361 N.E.2d 1211, 1216, *reh. den.,* and we will reverse only for an abuse of that discretion. *State ex rel. Rooney v. Lake Circuit Court* (1957), 236 Ind. 345, 348, 140 N.E.2d 217, 218.

For our purposes, however, we need not inquire whether or not the trial court abused its discretion by denying Terpstra's request for counsel of his choice because Terpstra has not presented us with an argument sufficient for us to reverse on this issue. For us to do that, Terpstra would not only have to demonstrate that the trial court ruled erroneously, but that there was resulting prejudice from that ruling. *P.S. by Harbin v. W.S.* (1983), Ind., 452 N.E.2d 969, *reh. den.; United Farm Bureau Mutual Ins. Co. v. Blanton* (1983), Ind.App., 457 N.E.2d 609, 613. This he has not done. Terpstra has proferred no explanation as to how and why he was harmed by the trial judge's ruling, and, considering that his appeal is from an adverse summary judgment, it would be very difficult for him to make such a showing. In deciding whether or not the impact of the alleged error was prejudicial, we must determine whether or not the right result was reached notwithstanding the error. *Atwood v. Prairie Village, Inc.* (1980), Ind.App., 401 N.E.2d 97, 100. We conclude that in this case, Terpstra's lack of counsel of his choice has not altered the correct disposition of this case by the trial court, so

there was no prejudice. Hence, there is no reversal.

Affirmed.

HOFFMAN, J., concurs.

GARRARD, J., concurs in result.