**LEE TOOL & MOULD, LTD.,**
**Plaintiff-Appellant,**

v.

**FORT WAYNE POOLS, INC.,**
**Defendant-Appellee.**

No. 85–1903.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1985.
Decided May 29, 1986.

Donnelly W. Hadden, Detroit, Mich., for plaintiff-appellant.

Jon A. Bragalone, Grotrian & Boxberger, Fort Wayne, Ind., for defendant-appellee.

Before COFFEY and RIPPLE, Circuit Judges, and CAMPBELL, Senior District Judge.*

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. Section 34-1-2-2 of the Indiana Code provides:

"The following action shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards:

COFFEY, Circuit Judge.

In this diversity action, the plaintiff, Lee Tool & Mould, Ltd. ("Lee Tool"), appeals the district court's decision dismissing its action for the tort of conversion, pursuant to Fed.R.Civ.P. 41(b), after a trial to the court, for failure to commence an action within the applicable Indiana two-year statute of limitations time period, Ind.Code § 34-1-2-2 (1973).[1]  We affirm.

I

The plaintiff, Lee Tool, is a Canadian corporation that manufactures moulds for the production of plastic products. In 1980, Lee Tool entered into a contract with IPS Group, Inc., acting as an agent for Aquabiotics, Inc., to manufacture two cavity tray moulds. Since these moulds were specifically manufactured for use by Aquabiotics, they had no market value as they could only be used by Aquabiotics at their production facility. The district court found that Lee Tool "knew that the mould[s] [were] for Aquabiotics and that Aquabiotics would be the owner of the mould[s]." District Court Order at 2 (April 30, 1985). The quoted prices for the two moulds were $73,670 (No. 623) and $17,350, respectively. In September, 1980, Lee Tool manufactured mould No. 623 at its Windsor, Ontario plant. During the time frame Lee Tool was manufacturing the mould, Aquabiotics contracted with the defendant, Fort Wayne Pools, Inc. ("Fort Wayne Pools"), a plastic fabricator, to test the mould. In the plastics manufacturing industry the custom is to have a third party, such as Fort Wayne Pools, perform tests on the moulds to insure that the moulds were manufactured according to specifica-

(1) for injuries to persons or character, for injuries to personal property, and for a forfeiture of penalty given by statute, within two (2) years."

The parties agree that this two-year statute of limitations time period applies to the facts in this case.

tions. Accordingly, on January 9, 1981, Lee Tool shipped mould No. 623 from its plant in Windsor, Canada to Fort Wayne Pools' factory in Indiana. The mould was processed through the United States Customs Office after Lee Tool posted a $6,100 temporary import bond, which allowed the mould to enter and remain in the United States for one year. It was anticipated that the mould would be returned to Lee Tool's Canadian plant for completion after Fort Wayne Pools completed its testing of the mould.

The mould testing was completed in late January, 1981, and Fort Wayne Pools billed Aquabiotics for the testing costs on February 9, 1981. During this time period, late 1980 through early 1981, Aquabiotics' business had been failing and eventually it filed for bankruptcy relief. Aquabiotics never paid Fort Wayne Pools for its testing of the mould and Fort Wayne Pools never shipped the mould back to Lee Tool for completion.

The district court found that Lee Tool's president and owner, Marion Lewandowski, contacted Fort Wayne Pools in early February of 1981, but no later than February 14, 1981, concerning the return of the mould to Lee Tool. This finding is not contested on appeal. At trial, Lewandowski testified that he spoke with a James Cooper, an employee of Fort Wayne Pools, and asked that the mould be returned, but that Cooper refused.[2]

"Q And he [Cooper, an employee of Fort Wayne Pools] said a statement to you as to why the mould was not being shipped back to you?
A That's correct.
Q And the statement was what, please?
A They didn't get paid for the tryout; and *until they got paid for it, then they would ship it back.*" (Tr. 35) (Emphasis added).

Lewandowski testified that he contacted Fort Wayne Pools on a number of other occasions during 1981 and 1982 concerning the return of the mould, and Fort Wayne Pools consistently replied that it would not return the mould until it was paid for its testing costs. The district court found, and Lee Tool does not contest, that Lee Tool knew that Aquabiotics was insolvent and incapable of paying its debts as of February 1981. District Court Order at 6; *see also* Tr. at 122.

In January 1982, Lee Tool obtained a one year extension of the temporary import bond. On November 6, 1982, John V. Carr, Lee Tool's custom house broker, demanded by letter that Fort Wayne Pools return the mould on or before January 10, 1983. Fort Wayne Pools refused to return the mould and Lee Tool was forced to forfeit its temporary import bond for failing to export the mould on a timely basis.

On February 22, 1983, Lee Tool filed a complaint against Fort Wayne Pools in the United States District Court for the East-

---

**2.** On cross-examination, Lewandowski testified as follows concerning the February conversation for the return of the mould:
"A Well, at that time, the mould wasn't finished; and Phil told me that they had shots; and I was anxious to complete the tool.
Q So you asked them to return it?
A That's right, yeah.
Q And you asked this of Jim Cooper?
A That's right.
Q And the response, once again, was?
A That they didn't get paid for the, for the tryout and that they were going to hold onto the tool.
     *     *     *     *     *     *
Q Mr. Lewandowski, referring again to your deposition taken November 28, 1984, were you asked this question, and did you give this answer:

'Question: When was the first time you demanded that Fort Wayne Pools release it to you, do you recall?"
And your answer was, 'Not really, no.'
A I didn't demand it, no.
Q Okay. You never demanded it?
A No, I didn't demand it. I asked for it, but I didn't demand it.
Q Okay.
THE COURT: Did you ask that it be returned in the conversation that you had in February '81?
THE WITNESS: Yes, I did.
BY MR. ANTALIS:
Q Are you certain of that?
A Yes." (Tr. 64, 129).

ern District of Michigan alleging that Fort Wayne Pools had committed the tort of conversion in failing to return the mould. The court dismissed this complaint pursuant to Fed.R.Civ.P. 12(b)(6) ruling that it was without personal jurisdiction over Fort Wayne Pools.[3] Lee Tool refiled its complaint in the Federal District Court for the Northern District of Indiana on May 29, 1984. This complaint was identical to the complaint filed in the Michigan Federal District Court alleging that Lee Tool owned mould No. 623 and that Fort Wayne Pools committed the tort of conversion in failing to return the mould after Lee Tool demanded that it be returned. In the meantime, in March 1983, Fort Wayne Pools, in order that it might recover its testing costs, attached a lien to the mould, pursuant to Indiana Code § 32–8–37–2;[4] and the mould was subsequently sold to Fort Wayne Pools at a public auction for one dollar.

After a trial on the merits, the district court granted the defendant's motion for involuntary dismissal, pursuant to Fed.R. Civ.P. 41(b), finding that the cause of action for conversion accrued in early February 1981, when Lewandowski called Fort Wayne Pools and asked that the mould be returned but Fort Wayne Pools refused to return the mould until it was reimbursed for its testing costs. Thus the court con-

cluded that the initial filing of this action against Fort Wayne Pools on February 22, 1983 was not made within the applicable Indiana two year statute of limitations.

The district court also stated that if it were to reach the merits of the plaintiff's claim for conversion, Lee Tool could only recover the market value of the specialty mould at the time of the conversion, which was its scrap value of $4,000, plus $6,000 for the forfeited bond, but was not entitled to recover the invoice price of $73,000 for the mould as damages. District Court Order at 13 (citing *Coffel v. Perry*, 452 N.E.2d 1066, 1069 (Ind.Ct.App.1983). Finally, the district court noted that Fort Wayne Pools' affirmative defense that it had a valid lien against the mould pursuant to the Indiana Plastic Fabricator's Lien Statute, Ind.Code § 32–8–37–2 (1982), "appears well taken." The court, however, did not specifically address the validity of this defense.

The issue in this case is whether the court erred in finding that the Indiana two year statute of limitations barred Lee Tool's action for conversion.[5]

## II

Pursuant to Indiana law, a claim for the tort of conversion accrues when the de-

---

**3.** On January 5, 1984, Lee Tool filed another complaint against Fort Wayne Pools, and added IPS Group, Inc. as an additional defendant. In contrast to the February 22, 1983 complaint, Lee Tool alleged in the January 5th complaint that the mould was sold to the IPS Group on January 9, 1981, when the mould was shipped to Fort Wayne Pools for testing. However, the complaint continues to state a cause of action against Fort Wayne Pools for conversion. This, of course, is an anomaly, since if Lee Tool did not own the mould, it could not commence an action for conversion as the filing of an action alleging the tort of conversion requires ownership. *See* Prosser & Keeton, *Torts* § 15 (1984). The January 5th complaint, however, was similarly dismissed for lack of personal jurisdiction over the defendant.

**4.** Section 32–8–37–2 of the Indiana Code provides:

"A plastic fabricator has a lien, depending on possession, on any die, mould, form, or pattern in his possession belonging to the customer, for the amount due him from the cus-

tomer for plastic fabrication work performed with a die, mould, form or pattern. A plastic fabricator may retain possession of the die, mould, form, or pattern until the amount due is paid."

**5.** For purposes of our analysis, we will assume that Lee Tool had an ownership interest in the mould. If it did not, then it could not sue for the tort of conversion. Further, we do not reach the merits of Fort Wayne Pools' argument that it had a valid lien against the mould, pursuant to Ind.Code § 32–8–37–2 (1982). If it did have a valid lien, and thus a proper legal interest in retaining the property, this would also defeat Lee Tools' claim for conversion. *See Yoder Feed Service v. Allied Pulletts, Inc.*, 171 Ind.App. 692, 359 N.E.2d 602 (Ind.Ct.App.1977). Since this statute was enacted in 1982, more than one year after Lee Tool requested that the mould be returned, then at the time of Lee Tool's request for the return of the mould in February 1981 Fort Wayne Pools did not have an enforceable interest in the mould under this statute.

fendant "exercises dominion over personal property to the exclusion and in defiance of the rights of the owner or withholds it from his lawful possession under a claim of title inconsistent with the owner's title." *Monarch Buick Co. v. Kennedy*, 138 Ind. App. 1, 209 N.E.2d 922, 924 (1965); *Howard Dodge & Sons, Inc. v. Finn*, 181 Ind. App. 209, 391 N.E.2d 638, 640–41 (1979). Indiana law requires the plaintiff to demonstrate he has demanded the return of the property as evidence of a conversion when the defendant initially obtains lawful possession of the property. *See French v. Hickman Moving & Storage Co.*, 400 N.E.2d 1384, 1389 (Ind.Ct.App.1980). Thus, "[w]hen the possession originates through a proper exercise of a right [as here], conversion in derogation of the plaintiff-bailor's rights occurs after the plaintiff makes an unqualified request for a return of the property." *THQ Venture v. S.W., Inc.*, 444 N.E.2d 335, 339 (Ind.Ct.App.1983) (citing *Yoder Feed Service v. Allied Pulletts, Inc.*, 171 Ind.App. 692, 359 N.E.2d 602 (1977); *Coffel v. Perry*, 452 N.E.2d 1066, 1069 (Ind.Ct.App.1983).

In this case, Fort Wayne Pools originally obtained lawful possession of the mould after Aquabiotics arranged with Lee Tool to ship the mould to Fort Wayne Pools for testing. As a federal appellate court sitting in diversity jurisdiction, we must determine whether Lewandowski's request for return of the mould in early February 1981 and Fort Wayne Pools' refusal to return the mould until it was reimbursed for its testing costs constitutes a conversion under Indiana law. If it does, the cause of action accrued in early February, 1981, and thus Lee Tool failed to comply with Indiana's two-year statute of limitations, when it commenced this action on February 22, 1983, as it failed to file a complaint within two years of the alleged conversion.

The district court decided to dismiss this action, pursuant to Rule 41(b),[6] after the conclusion of the trial, finding that from the facts adduced at trial the plaintiff had made an "unqualified request" for the return of the mould in early February, 1981, and that pursuant to Indiana law the plaintiff had not filed its action within the two year statute of limitations. The following facts support the district court's conclusion that Lee Tool made an unqualified demand to return the property. In response to questions asked on cross examination—"So you asked them to return it?" and "Did you ask that it be returned in the conversation that you had in February '81?"—Lewandowski, the president of Lee Tool, stated "that's right, yeah," and "yes I did," respectively. *See supra* note 2. Thus the evidence demonstrates that the plaintiff made an unqualified request for the return of the mould. Further, Lee Tool knew in early February, 1981, that Fort Wayne Pools would not return the mould pursuant to Lee Tool's request until Fort Wayne Pools was paid for its testing costs; Lee Tool also knew that payment would not be forthcoming as Aquabiotics was insolvent. *See* District Court Order at 6; Tr. at 122. Thus, in early February, 1981, when Lee Tool asked for the return of the mould, it was made aware of Fort Wayne's position that the mould would not be returned until Fort Wayne Pools had been reimbursed for its testing costs, a proposition unlikely to occur as Lee Tool was well aware that Aquabiotics was insolvent and incapable of paying its debts. Since its initial refusal in February of 1981, Fort Wayne Pools adhered to its position and refused to return the mould until paid; subsequently it sold the mould in 1983, pursuant to the Indiana Lien Statute Section 32–8–37–2, after not

6. Rule 41(b) states:
   "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a)."

receiving payment.[7] We agree with the court that the evidence demonstrates in early February 1981, Lee Tool could have commenced this action for conversion.[8]

From our review of Indiana law, we are convinced that an Indiana court would consider Lee Tool's request for the return of the mould, and Fort Wayne Pools' immediate refusal to comply with this request until it was paid for its testing costs, sufficient evidence to establish the tort of conversion. An Indiana appellate court, faced with a similar set of facts in *Yoder Feed Service v. Allied Pulletts, Inc.*, 359 N.E.2d 602 (Ind.Ct.App.1977), held that the defendant had converted the plaintiff's property after the defendant refused to honor plaintiff's request to return his property. In *Yoder*, Yoder (the plaintiff) contracted with Allied (the defendant) to raise Allied's young chickens. Allied's agent called Yo-

der to inform him that it would pick up the chickens at Yoder's place of business, but Yoder told the agent that he would refuse to load the chickens unless he received $12,000. The agent offered $4,700, representing the amount of money expended by Yoder for feed,[9] but Yoder refused payment. The Indiana Court of Appeals held that Yoder's telephone call refusing to allow Allied's agent to pick up the chickens, absent payment of $12,000 was an "affirmative tortious act sufficient to sustain a complaint of conversion." *Id.* at 605. Similar to the facts in the *Yoder* case, Lee Tool requested, in early February, 1981, that Fort Wayne Pools return the mould; Fort Wayne Pools, however, refused to return the mould until it was paid for its testing. This refusal to return the mould in response to an unqualified request for its return is sufficient evidence to establish

---

**7.** Normally, the trial court is to make its Rule 41(b) decision at the close of the plaintiff's evidence. *See Sanders v. General Services Adm.*, 707 F.2d 969, 971 (7th Cir.1983). Our court has approved of the practice of district court's reserving their Rule 41(b) decision until after the trial is complete. See *id.* Usually, pursuant to a Rule 41(b) motion to dismiss the action, the court is to consider only the plaintiff's evidence in making its decision. *Id.* In *Sanders*, we recognized the criticism of this approach—where courts would wait until after all of the evidence is presented before entering its decision pursuant to Rule 41(b):

"The use of a renewed 41(b) motion at the end of a case has been criticized on the grounds that the Rule speaks only of such motion at the end of plaintiff's case and that after all the evidence is in, the court should simply weigh all the evidence and decide the case on the merits."

*Id.* at 972, n. 3 (citing 5 Moore's Federal Practice ¶ 41.13[1] ). While we note that there has been criticism of the approach of waiting until after trial before making the Rule 41(b) decision, this criticism is not relevant to the case at hand since plaintiff can cite no evidence presented during defendant's case-in-chief that dilutes the effect of the evidence presented during its case regarding its unqualified request for return of the mould and Fort Wayne Pools' refusal to do so.

**8.** We note that in early 1981, at the time the cause of action for conversion accrued, Fort Wayne Pools might have been able to file a claim against Aquabiotics, as a third party defendant, for the testing costs; however, Fort

Wayne Pools did not have a valid lien under section 32–8–37–2 of the Indiana Code as this statute was not enacted until 1982. *See* note 5, supra. Thus if Lee Tool would have timely filed its conversion action in early February 1981, this statutory defense would not have been available to Fort Wayne Pools at the time of the filing of the action for conversion.

Even though section 32–8–37–2 of the Indiana Code had not been enacted until one year after alleged conversion took place, our research reveals that Fort Wayne Pools may have been able to assert a valid mechanics common-lien for its testing cost in February 1981, when Lee Tool's cause of action for conversion arose. In *Terpstra v. Farmers and Merchants Bank*, 483 N.E.2d 749, 755 (Ind.App.1985), the court noted that "common law liens are still recognized in Indiana ..." although "in order to have a legal remedy for the enforcement of a common law lien, statutory authority must exist." Two elements are necessary for a common law lien to exist—"debt and possession." *Id.* Further, statutory authority must exist to enforce the lien. *Id.* In this case, Aquabiotics owed Fort Wayne Pools for the testing costs and Fort Wayne Pools had possession of the mould; thus both debt and possession exist in this case. Further, Fort Wayne Pools could have enforced its lien through the statutory authority of section 34–1–11–1 of the Indiana Code that states the plaintiff "may have an attachment against property of the defendants" if he commences an action for the recovery of money.

**9.** Pursuant to Indiana Lien Law, Yoder had a valid lien only for the $4,700 that he had expended for the feed.

that the cause of action accrued in early February, 1981, more than two years before the filing of this complaint for conversion.

 Lee Tool argues that the plaintiff did not make an unqualified request for the return of the property in 1981 as evidenced by the fact that he sought and received an extension of the United States Customs temporary import bond, allowing the mould to remain with Fort Wayne Pools in the United States for an additional year. The district court, however, rejected this argument finding that the evidence of this extension did not demonstrate that Lee Tool tacitly allowed Fort Wayne Pools to retain possession by obtaining the one year extension since "[p]laintiff was merely trying to avoid forfeiting the bond and having to pay the liquidated damage penalty which would result from the mould not being returned." District Court Order at 11. This finding of fact, made pursuant to Fed.R.Civ.P. 41(b), is subject to reversal only if it is clearly erroneous. *Sanders v. General Services Adm.*, 707 F.2d 969, 971 (7th Cir.1983); *see also Ekanem v. Health and Hosp. Corp. of Marion Cty., Ind.*, 724 F.2d 563, 568 (7th Cir.1983). Lee Tool has failed to offer any evidence to demonstrate that this finding is clearly erroneous.

The decision of the district court dismissing this action for failure to comply with the Indiana two year statute of limitations governing the filing of an action for conversion is AFFIRMED and costs are awarded to Fort Wayne Pools.